AMERICAN BRIDGE COMPANY, a Corporation, Appellant, v. FORREST SMITH, State Auditor of the State of Missouri.—No. 38677.—179 S. W. (2d) 12.

Division One, February 7, 1944.

Rehearing Denied, March 6, 1944.

Motion to Transfer to Banc Overruled, April 3, 1944.

*W. R. Mayne, N. W. Hartman* and *Fordyce, White, Mayne, Williams & Hartman* for appellant.

618

*William G. Marbury, J. W. Thurman, D. A. Thompson* and *Tyre Burton,* Assistant Attorney General, for respondent.

VAN OSDOL, C.—Action for a declaratory judgment to determine the taxability of certain sales under the provisions of the Sales Tax Act of Missouri (Article 24, Chapter 74, Revised Statutes of Missouri 1939, Mo. R. S. A., as amended and reenacted, Laws of Missouri 1941, at page 698).

The petition alleged that plaintiff is a corporation organized and existing under the laws of the State of New Jersey; has its principal place of business at Pittsburgh, Pennsylvania; and is engaged in the business of fabricating structural steel at various places without the State of Missouri, which products the plaintiff sells to customers for use or consumption in this state. The petition further alleged that all of the sales so made are in interstate commerce and so are not taxable under the Sales Tax Act, supra; that the defendant, Forrest Smith, State Auditor of Missouri, has otherwise contended, and is threatening to levy and enforce the payment of the tax. The petition prayed the court to settle, ascertain, determine and declare the rights, duties and obligations of the parties with respect to the matters arising by reason of the controversy. Pending the final termination of the action, taxes sought to be collected by defendant have been deposited in the hands of the Clerk of the Circuit Court of Cole County. The trial court found the issues for defendant, holding the sales to be subject to the Sales Tax Act, supra, and plaintiff has appealed.

As stated in the petition, plaintiff, a foreign corporation, fabricates structural steel products, and sells to customers who purchase its products for use or consumption in Missouri (and elsewhere). Plaintiff is licensed in Missouri to transact business as a foreign corporation, and maintains a sales office at St. Louis. No stock of its products is maintained in this state. Its salesmen solicit proposals for the purchase of its products; the proposals are forwarded to plaintiff at its principal offices in Pittsburgh for acceptance, after which a contract signed by the customer is forwarded to Pittsburgh for the final signature of an official of plaintiff. The products are consigned to the purchasers in some instances f. o. b. cars at plaintiff's plants in other states, and in other instances f. o. b. the point of destination in Missouri. Collections are made by the plaintiff's treasurer at Pittsburgh.

The sales, necessitating transportation of goods from other states to Missouri, are admittedly the transactions of interstate commerce. The question presented in the ▮▮ trial court was whether the sales are exempted from the retail sales tax by the provisions of Section 11409, R. S. 1939, Mo. R. S. A., as amended, Laws of Missouri 1941,

at page 702. See now, Laws of Missouri 1943, at page 1017. This section as amended, providing exemptions from the provisions of the Sales Tax Act, is in part as follows:

"There is hereby specifically exempted from the provisions of this article and from the computation of the tax levied, assessed or payable under this article such retail sales as may be made in commerce between this state and any other state of the United States, . . . and any retail sale which the State of Missouri is prohibited from taxing under the Constitution or laws of the United States of America, . . ."

It is contended by the plaintiff (appellant) that the clause, "such retail sales as may be made in commerce between this state and any other state of the United States," should be construed to exempt the sales of plaintiff, "as being sales made in interstate commerce"; whereas, defendant (respondent) contends that the clause should be construed to exempt only "such retail sales in commerce between this state and any other state of the United States" the taxation of which infringes the Commerce Clause (Section 8, Article I, Constitution of the United States).

The power of taxation is essential to the existence of a state. But when a state proceeds to regulate commerce among the several states it is exercising the very power that is granted to Congress and is doing the very thing which Congress is authorized to do. Gibbons v. Ogden, 9 Wheat. 1. With respect to the exercise of the power of the state to tax goods, which have come to rest within the state, the question presented is not the extent of the power of Congress to protect interstate commerce, but whether a particular exercise of state power in view of its nature and operation must be deemed to be in conflict with that paramount authority. Santa Cruz Fruit Packing Co. v. National Labor Relations Board, 303 U. S. 453, 58 S. Ct. 656; Bacon v. Illinois, 227 U. S. 504, 33 S. Ct. 299; Woodruff v. Parham, 8 Wall. 123.

Decisions of moment, upon facts poised very near to the line of conflict between the taxing power of a state and the authority of Congress to regulate interstate commerce, have been lately rendered with respect to the taxability of sales in interstate commerce where the sales tax has been imposed by the state of destination. See McGoldrick v. Berwind-White Coal Mining Company (a Pennsylvania corporation), 309 U. S. 33, 60 S. Ct. 388; McGoldrick v. Felt & T. Mfg. Co. (an Illinois corporation), and McGoldrick v. A. H. DuGrenier, Inc. (a Massachusetts corporation), 309 U. S. 70, 60 S. Ct. 404. In these cases, all of which were decided by the Supreme Court of the United States January 29, 1940, a tax of two percentum upon the amount of the receipts from every sale (purchasers for resale are exempted) in the City of New York was involved. The sales tax is provided by local law of the City of New York, adopted under au-

thority delegated by the legislature of the State of New York; the "sale" being defined by Sec. 1 (e), Local Law No. 24 of 1934 (published as Local Law No. 25) as "any transfer of title or possession, or both . . . in any manner or by any means whatsoever for a consideration or any agreement therefor." The tax was determined by the Comptroller of the City of New York to apply to sales of products mined or manufactured in the states of the sellers' incorporation; from these states the property was transported and the transfer of possession was made within the taxing city. The orders for merchandise were solicited in the taxing municipality, the vendors maintaining sales offices therein. In the case of McGoldrick v. Berwind-White Coal Mining Company, supra, the contracts for the sale of the coal were executed and collections were made in the City of New York; in the cases of McGoldrick v. Felt & T. Mfg. Co. and McGoldrick v. A. H. DuGrenier, Inc., supra, orders for the manufactured articles were forwarded to the offices of the defendants in the states of their incorporation for approval, and collections were there made. The rulings of the Comptroller were upheld (in so far as the Commerce Clause was concerned)—the Congress had not acted; immediately preceding the transfer of possession, "which is the taxable event regardless of the time and place of passing title," the merchandise had been transported in interstate commerce and brought to its journey's end; the tax was not upon the operations of interstate commerce, and did not obstruct, aim at or discriminate against interstate commerce; ▇ it imposed no burden upon interstate commerce which intrastate commerce did not bear; "Equality is its theme." And in Jagels, "A Fuel Corporation," v. Taylor, 309 U. S. 619, 60 S. Ct. 469 (see 280 N. Y. 766, 21 N. E. 2d 526 for a statement of the facts) —a case in which the application of the sales tax of the City of New York to sales of coal from a yard in New Jersey and to the purchaser in the City of New York was upheld—the vendor, a Delaware corporation, authorized to transact business in New York, had its principal place of business in New Jersey, but maintained a sales office in the City of New York; orders from customers were accepted, and collections were made in the State of New Jersey. The orders were not all solicited in the City of New York. The taxable event, transfer of possession, as in the McGoldrick cases, occurred within the taxing municipality, New York City.

▇ The ultimate burden of the sales tax of the City of New York is upon the buyer (McGoldrick v. Berwind-White Coal Mining Company, supra); likewise, is the sales tax of Missouri. Section 11412, R. S. 1939, Mo. R. S. A., sec. 11412; State ex rel. and to Use of Berra v. Sestric, 349 Mo. 182, 159 S. W. 2d 786.

▇ The Sales Tax Act of Missouri imposes an excise tax (State ex rel. Missouri Portland Cement Co. v. Smith, 338 Mo. 409, 90 S. W. 2d 405) upon every retail sale in the state of tangible personal prop-

erty. Subsection (a), Section 11408, R. S. 1939, Mo. R. S. A., sec. 11408. It is provided that "Sale at retail" means any transfer of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption. Subsection (g), Section 11407, R. S. 1939, Mo. R. S. A., sec. 11407.

The *transfer of the ownership of, or title to,* the property—the *sale at retail* as defined by the Sales Tax Act, the "taxable event" (McGoldrick v. Berwind-White Coal Mining Co., supra)—appears, under the facts of the case at bar, to be in some instances in states other than Missouri, for the evidence shows that in compliance with many of the contracts of sale plaintiff's products were delivered free on board cars at its plants without this state. The transfers of the ownership of, or title to, the products of plaintiff are presumed to have taken place where the possession of the products was delivered to the vendees; there is no evidence that the plaintiff and the purchasers had a contrary intention. And in these instances where the title was presumptively transferred to the purchasers in a foreign state (delivery f. o. b. cars at plaintiff's plants in other states) it would seem beyond question that such sales may not be taxed (basically) under the provisions of our Sales Tax Act, inasmuch as the sales were not sales at retail "in the state" (Subsection (a), Section 11408, supra); further the application of a sales tax to an event of a sales transaction of interstate commerce, which event does not occur in the territory of the taxing authority, should be held invalid (Cf. McGoldrick v. Berwind-White Coal Mining Co., supra); the sale, as stated in the brief of defendant's counsel, "must occur *in this state.*"

However, as stated, there are sales shown by the evidence in the case at bar in which the products sold were consigned free on board destination in Missouri and, in these sales, the *sales at retail* (taxable events), transfers of ownership or title, though consummating sales (transactions) in interstate commerce, occurred immediately *after* the merchandise had been transported in interstate commerce. These sales at retail are subject, we believe (according to the decisions of the McGoldrick cases and Jagels, "A Fuel Corporation," v. Taylor, supra), to a sales tax in Missouri in so far as the Commerce Clause is concerned. We should determine if it was the intention of the legislature that such sales should be taxed under the Sales Tax Act of Missouri.

"The primary rule of construction of statutes is to ascertain the lawmakers' intent, from the words used if possible; and to put upon the language of the Legislature, honestly and faithfully, its plain and rational meaning and to promote its object, and 'the manifest purpose of the statute, considered historically,' is properly given consideration." Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S. W. 2d 920; Artophone Corporation v. Coale, 345 Mo. 344, 133 S. W. 2d 343. While statutes authorizing a particular

tax are to be construed strictly against the taxing authority (A. J. Meyer & Co. v. Unemployment Comp. Commission, 348 Mo. 147, 152 S. W. 2d 184), a tax exempting statute will be strictly construed against him who claims to be exempt under it (Mississippi River Fuel Corporation v. Smith (350 Mo. 1, 164 S. W. 2d 370).

The strict construction of the exemption section should not force the conclusion that the legislature intended other than that which it expressed in plain language, if the exemption as expressed in plain language is reasonable. The legislature did not express an intention that only retail sales in interstate commerce transactions the taxation of which would infringe the Commerce Clause should be exempted, and to so construe the section would greatly, limit the embrace of the exemption.

It must be conceded that the Sales Tax Act, if applicable to the sales in controversy, does not aim at, or discriminate against interstate commerce, and imposes the same burden upon the sales in controversy as is imposed upon sales in intrastate commerce. To construe the exemption section to include sales of tangible personal property in which the transfer of ownership, or title to, the property occurs after the property has come to its destination in this state, would exempt *sales at retail* in the state with resultant loss of revenue, although the personalty so sold, being at the end of its journey within Missouri was consequently receiving the protection of the state's laws. And a construction of the exemption section which would exempt sales in interstate commerce which the state may otherwise tax—the purchasers of goods from sellers in intrastate commerce being required to pay the sales tax, and purchasers, in sales in interstate commerce (otherwise taxable), not being obliged to pay—would place sellers in intrastate commerce in a position of competitive disadvantage. Of such a tax, although imposed upon a taxable event an integral part of a transaction of interstate commerce, it is now written that the burden of such a tax upon interstate commerce is merely incidental or consequential. However, we have found it nowhere written that such a tax does not burden interstate commerce. We may assert that there are reasonable men who believe such a tax subversive to the freedom of commercial intercourse among the states, tending to deprive buyers and sellers of one nation of the free enjoyment of the markets of the nation. We are herein interested in the latter view only in so far as it may tend to justify the exemption expressed by plain language in the section as a reasonable one.

If it was the intention of the legislature to exempt, from the provisions of the Sales Tax Act, retail sales in the transactions of interstate commerce, since such exemption is reasonable, it cannot be successfully urged that the application of the exemption to the sales in controversy is invalid because apparently unjust in that it would

place sellers in intrastate commerce in a position of competitive disadvantage.

We may resort to the history of the exemption section, and it would not be amiss to refer to the entries of the legislative journals, as an aid to us here.

Plaintiff urges that the Amendment of 1941, by which the words "in commerce" were inserted in the exemption section (Journal of the House, 61st General Assembly, 1941, p. 550; Journal of the Senate, 61st General Assembly, 1941, p. 1332), is indicatory of an intention of the legislature to exempt all sales in interstate commerce. The insertion of the words "in commerce," we believe, had no significance in its bearing on the question herein considered, tending only to clarify the application of the section. In referring to the exemption section prior to the Amendment of 1941, this court tacitly assented to a construction of the section as being that "which exempts sales in interstate commerce transactions . . . " State ex rel. Kansas City Power and Light Company v. Smith, 342 Mo. 75, 111 S. W. 2d 513. Subsequently to the amendment, this court stated, in the case of Mississippi River Fuel Corporation v. Smith, supra (a case in which the court was considering sales which it held to be the transactions of intrastate commerce), that "Section 11409 does no more than to exempt from the sales tax sales made in interstate commerce."

Defendant urges that the exemption section should be construed as if it provided, "There is hereby specifically exempted . . . such retail sales as may be made in commerce between this state and any other state which the State of Missouri is prohibited from taxing under the Constitution or laws of the United States . . . " Such a construction, as hereinbefore stated, manifestly restricts the meaning of the plain language of the section. Moreover, the legislature refused to give the exemption section the express meaning as is urged by defendant by rejecting an amendment proposal to strike from the section the words "and any retail sale." (See Journal of the Senate, 61st General Assembly, 1941, p. 1332). This was after the decision, McGoldrick v. Berwind-White Coal Mining Company, supra.

Proposals, to change or amend the exemption section when reenacted, were presented to the 61st and 62nd General Assemblies, which would have expressly given it a meaning in effect the same as the construction urged by defendant. None of these proposals were adopted. This opinion will not be extended to include a discussion of them. See passim, Journals of the Senate and House, 61st and (when available) 62d General Assemblies of Missouri.

In the case of Henneford v. Silas Mason Company, 300 U. S. 577, 57 S. Ct. 524, it was held that the application of a general compensating use tax, upon the use of tangible personal property which had been bought at retail in other states and transported into the

taxing state, after the property was at rest and had become part of the common mass of property within the state of destination, is valid in so far as the Commerce Clause is concerned. Three General Assemblies of this state have convened since the decision of that case and no general compensating use tax has been enacted, although the proposition was presented to the 60th and 61st General Assemblies. See Journal of the House, 60th General Assembly (1939), pp. 59, 1146; Journal of the House, 61st General Assembly (1941), pp. 547, 1398; Journal of the Senate, 61st General Assembly (1941), p. 1037. It is significant that a general compensating use tax (if otherwise valid) upon the property after it had come to rest and had become part of the common mass of property of this state would not infringe the Commerce Clause if applied to all of the tangible personal property involved in this action, including that sold in the interstate transactions which were sales at retail in other states.

The failure of the legislature to enact a general compensating use tax, and the failure of the legislature to amend by expressly restricting the exemption section to exempt only retail sales in interstate commerce which infringe the Commerce Clause, lend support to our conclusion that the legislature intended that the section should exempt all sales at retail in the sales transactions of interstate commerce.

The judgment should be reversed and remanded with directions to render a declaratory judgment in harmony with this opinion.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.


PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.