**173 P.2d 91**

## PRATT–GILBERT HARDWARE CO. v. O'NEIL et al., State Tax Commission.

### No. 4902.

Supreme Court of Arizona.

Sept. 30, 1946.

Snell, Strouss & Wilmer, of Phoenix, for appellant.

John L. Sullivan, Atty. Gen., and Burr Sutter, Asst. Atty. Gen., for appellees.

STANFORD, Chief Justice.

Appellant paid certain taxes under our excise tax law and thereafter under Sec.

**394**

73-1318, A.C.A.1939, filed its protest addressed to the State Tax Commission claiming:

"1. The sales are not sales within the State of Arizona, and are, therefore, not subject to the privilege sales tax for the reason that delivery was made without the State of Arizona.

"2. The transactions are and were transactions in interstate commerce and exempt from tax under the provisions of Section 73-1308, A.C.A.1939."

Thereafter, appellant asked for a hearing before the tax commission and after hearing and denial, brought its action in the superior court. Judgment there was rendered on behalf of appellee, from which judgment this appeal is taken.

When the appellant made its return of sales each month as the law required, it did not include sales f. o. b. outside the state. This particular sale occurred at the office of appellant in Phoenix, Arizona, and payment made there, and the appellants contend that since the sales were f. o. b. points outside of Arizona they were, therefore, sales in interstate commerce and not subject to our excise revenue act.

In our recent case of Crane Co. v. Arizona State Tax Commission, 63 Ariz. 426, 163 P.2d 656, 661, we said:

"Under the agreed facts, the sales were made in Arizona and are, therefore, taxable. If the transactions were in inter-state commerce, under the terms of section 73-1308, A.C.A.1939, no tax based on such sales could be levied or collected. But obviously they are not in interstate commerce, within the meaning of the commerce clause. It has been repeatedly held that sales taxes do not unconstitutionally burden interstate commerce as applied to sales under the circumstances shown here. It seems to be well settled that general sales taxes or privilege taxes based on sales do not unconstitutionally burden interstate commerce in the following situation: Where the seller solicits or enters into a contract of sale within the state and the seller maintains a place of business within the state, even though the article cannot be purchased within the boundaries of the taxing jurisdiction, and it is necessary to transport the property in interstate channels from without the boundaries of the taxing jurisdiction; provided, however, that the delivery of the merchandise is made to the purchaser in the taxing jurisdiction either directly from such extrastate course or through the offices of the seller within the taxing state; and provided further, that no congressional enactment or policy is offended. McGoldrick v. Berwind-White Coal Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876, and note p. 900. It would serve no useful purpose to discuss the various reasons why a transaction of this character does not come within the interstate rule. No cases were cited by appellant in support of its claim that the transactions mentioned were in interstate

commerce, nor is any congressional enactment or policy involved.

"The late case of Montgomery Ward & Co. v. State Comm. of Revenue and Taxation, 156 Kan. 408, 133 P.2d 1008, deals with the precise question we now have for consideration. In that case the supreme court of Kansas rejected a similar contention on behalf of the taxpayer. There, as here, the taxpayer was a foreign corporation maintaining a place of business in Kansas. It sold to residents of the state merchandise which was shipped from without the state either directly to the customer within the state or by relay through the seller's office in Kansas. Under a similar statute to ours, it was held that these were taxable transactions. They were Kansas sales within the meaning of the statute, and not interstate commerce transactions."

In the instant case appellant in its brief states:

"The identical question here presented was before the Supreme Court of Missouri in the cases of American Bridge Co. v. Smith, 352 Mo. 616, 157 A.L.R. 798, 179 S.W.2d 12 and Bingley Coal Co. v. Smith, 352 Mo. 627, 179 S.W.2d 17.

"In holding the Missouri sales tax void as applied to sales f. o. b. points outside the State of Missouri, the Missouri Court state in American Bridge Co. v. Smith, supra, 179 S.W.2d at page 15:

" '* * * further the application of a sales tax to an event of a sales transaction of interstate commerce, which event does not occur in the territory of the taxing authority, should be held invalid (cf. McGoldrick v. Berwind-White Coal Mining Co., supra); the sale as stated in the brief of defendant's counsel "must occur in this state." ' "

We further quote from the case of American Bridge Co. v. Smith, supra [352 Mo. 616, 179 S.W.2d 15]:

"The transfer of the ownership of, or title to, the property—the sale at retail as defined by the Sales Tax Act [Mo.R.S.A. § 11407 et seq.], the 'taxable event' (McGoldrick v. Berwind White Coal Mining Co., supra)—appears, under the facts of the case at bar, to be in some instances in states other than Missouri, for the evidence shows that in compliance with many of the contracts of sale plaintiff's products were delivered free on board cars at its plants without this state. The transfers of the ownership of, or title to, the products of the plaintiff are presumed to have taken place where the possession of the products was delivered to the vendees; there is no evidence that the plaintiff and the purchasers had a contrary intention. And in these instances where title was presumptively transferred to the purchasers in a foreign state (delivery f. o. b. cars at plaintiff's plants in other states) it would seem beyond question that such sales may not be taxed (basically) under the provisions of our Sales Tax Act, inasmuch as the sales were not sales at retail 'in this State,'

Subsection (a), Section 11408, supra; * * *."

As stated by appellant,

"The Supreme Court of the United States denied a petition for certiorari in Smith v. American Bridge Co., supra, 323 U.S. 712, 65 S.Ct. 37, 89 L.Ed. 573, thus approving the decision of the Supreme Court of Missouri."

The answering brief of the appellee in the instant case states:

"* * * the American Bridge Co. case, supra, conceded that if section 11409, supra, (the Missouri Code Section), was intended to exempt only those sales the taxation of which would infringe the Commerce Clause, then the sales in question would not have been exempt from taxation. Those sales, as in the instant case, were sales f. o. b. a point outside the State of Missouri. * * *"

We quote further from Smith v. American Bridge Co., supra:

"It must be conceded that the Sales Tax Act, if applicable to the sales in controversy, does not aim at, or discriminate against interstate commerce, and imposes the same burden upon the sales in controversy as is imposed on sales in intrastate commerce. To construe the exemption section to include sales of tangible personal property in which the transfer of ownership, or title to, the property occurs after the property has come to its destination in this state, would exempt sales at retail in the state with resultant loss of revenue, although the personalty so sold, being at the end of its journey within Missouri was consequently receiving the protection of the state's laws. And a construction of the exemption section which would exempt sales in interstate commerce which the state may otherwise tax—the purchasers of goods from sellers in intrastate commerce being required to pay the sales tax, and purchasers, in sales in interstate commerce (otherwise taxable), not being obliged to pay—would place sellers in intrastate commerce in a position of competitive disadvantage. Of such a tax, although imposed upon a taxable event in integral part of a transaction of interstate commerce, it is now written that the burden of such a tax upon interstate commerce is merely incidental or consequential. * * *"

That part of Section 11409, Mo.R.S.A., as amended, of the laws of the state of Missouri 1941, which is relative to the issue here, is as follows:

"* * * There is hereby specifically exempted from the provisions of this article and from the computation of the tax levied, assessed or payable under this article such retail sales as may be made in commerce between this state and any other state of the United States * * * and any retail sale which the State of Missouri is prohibited from taxing under the Constitution or laws of the United States of America. * * *"

Our Section 73-1308, supra, relating to the matter at issue is as follows:

"Constitutional prohibition.—The taxes herein levied shall not be construed to apply to transactions in interstate commerce which, under the Constitution of the United States, the state of Arizona is prohibited from taxing or upon any sales made to the United States government, its departments or agencies, nor to businesses or transactions exempted from taxation under the Constitution of the United States, or the constitution of the state of Arizona."

■ As stated by appellees, "The only interstate transactions exempted from the sales tax are those that the federal constitution required to be exempt."

In the instant case, an Arizona corporation, having offices in and place of business in Arizona, entered into the sales contracts in this state and received payment here. Such a condition we decided in Crane Co. v. Arizona Tax Comm., supra, when we stated;

"* * * It is true that a merchant who resides without the state of Arizona may through interstate commerce take an order and sell and ship to a resident of this state goods from another state without the payment of a tax. McLeod v. J. E. Dilworth Co., 322 U.S. 327, 349, 64 S.Ct. 1023, 1030, 88 L.Ed. 1304, 1319. In that respect, the foreign merchant may have some advantage of the local merchant. But the law is a revenue measure for the privilege of doing business within the state. The law operates equally among those who are subject to the jurisdiction of the state. That some merchant without the jurisdiction may have some advantage thereby is something over which the court has no control. Only the legislative branch could correct this apparent inequality. * * *"

■ It is our view from the foregoing cases that the fact that some part of the transaction may have moved in interstate commerce at one time or another does not make the sale interstate in character so as to exempt it from taxation. This is made plain in the case of McGoldrick v. Berwind-White Coal Min. Co., 309 U.S. 33, 60 S.Ct. 388, 392, 84 L.Ed. 565, 128 A.L.R. 876, wherein it is stated, "Not all state taxation is to be condemned because, in some manner, it has an effect upon commerce between the states."

Judgment is affirmed.

La PRADE, Judge (specially concurring).

I concur in the results arrived at in the opinion of the CHIEF JUSTICE. I do not agree with his interpretation that the determination of this case is in any wise controlled by our decision in Crane Co. v. Arizona State Tax Commission, 63 Ariz. 426, 163 P.2d 656. In that case merchants within the state of Arizona sold merchandise or materials manufactured and located without the state and caused them to be delivered directly to the purchasers within

the state. I am still thoroughly in accord with the opinion on the facts therein involved. That portion of the opinion which indicates that the delivery of the merchandise must be made to the purchaser in the taxing jurisdiction either directly from the extrastate source or through the offices of the seller within the taxing state was an abstract generalization applicable to the facts therein involved. I believe that the court should recede from that portion of the decision insofar as it may be construed to state an absolute rule applicable in all cases even to the facts in the case at bar.

The Act creating the Excise Revenue Act of 1935 (Laws 1935, Chap. 77) is entitled "An Act relating to excise taxation, and to impose a license fee and a privilege tax upon the privilege of engaging in certain occupations and business." This court first held that the tax exacted is in the nature of a license tax—to quote "* * * It must be kept in mind that a privilege tax is not a tax on property but a tax on the right to engage in business * * *." White v. Moore, 1935, 46 Ariz. 48, 46 P.2d 1077, 1081. The next expression of the court came in City of Phoenix v. State of Arizona, 1938, 53 Ariz. 28, 85 P.2d 56, 58, wherein the court said, "The sales tax is an excise and not a property tax * * *," citing White v. Moore, supra. The court in O'Neil v. United P. & C. Co-operative, 1941, 57 Ariz. 295, 113 P. 2d 645, 647, in referring to the act under question, said:

"* * * It is an excise tax imposed by the legislature in the exercise of its taxing power for the purpose of raising revenue and is in no sense of the term for regulation. The power to provide for such a tax does not rest or originate in the police power of the state which enables it to regulate business in the interest of public peace, health and safety. That the sales tax is not a license tax is pointed out in Shanks v. Kentucky Independent Oil Co., 225 Ky. 303, 8 S.W.2d 383, 385, where the court, in distinguishing between an excise tax in its original limited sense and a license tax, said that 'the tax levied by this act is an excise' and approved the statement in 26 R.C.L. 34 that 'excises, in their original sense, were something cut off from the price paid on a sale of goods, as a contribution to the support of the government.' * * *"

Then only recently in Arizona State Tax Commission v. Frank Harmonson Co. Metal Products, 1945, 63 Ariz. 452, 163 P. 2d 667, 668, the court said:

"Strictly speaking, the law under consideration is an Excise Revenue Act. It is something more than a sales tax measure. It is a tax on the right to engage in business. White v. Moore, 46 Ariz. 48, 46 P.2d 1077. In most cases, the tax may be measured by the gross amount of sales, but a sale is not a prerequisite to the tax. * * *"

As pointed out in the O'Neil case, supra, the Act specifically provides that it was

enacted for the purpose of raising public money to be used in liquidating the outstanding obligations of the state, its counties, and for other public purposes. I am of the opinion that the Act is purely and simply a revenue measure. It is in no sense regulatory. Its purpose is and was to raise public monies. It is not a license tax nor a privilege tax. It exacts from the seller-taxpayer revenue measured in some instances on his gross income, in others on the gross proceeds of his sales from his business. It is not a tax on the privilege of doing business, rather it is a tax on business done. " 'Business' includes all activities or acts, personal or corporate, engaged in or caused to be engaged in with the object of gain, benefit or advantage either direct or indirect, but not casual activities or sales." Section 73-1302. By the same section, a sale is defined as follows: " 'Sale' means any transfer of title or possession, or both, exchange, barter, lease or rental, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property, for a consideration, * * *."

To objectively and realistically observe the effects of the Act is of assistance to me in determining whether it is a license (privilege) tax or an excise and revenue-raising measure. The court is privileged to take judicial knowledge of the fact that the Act, in the fiscal year ending June 30, 1946, produced in excess of $9,500,000 in tax monies.

In the instant case the taxpayer received orders from customers doing business in Arizona for machinery and materials to be used and consumed in Arizona, all of which was well known to the vendor-taxpayer at the time the sales were made. The orders were taken at its Phoenix office; the purchase payments were made there. The taxpayer did not have the materials on hand so ordered them from various supply houses without the state with which it did business. The bills submitted by appellant to the purchasers showed that the seller had caused the articles purchased to be shipped direct to the purchasers at points from without the state, f.o.b. the cars, St. Louis, Trenton, and Cincinnati. It is the contention of the taxpayer that these sales are not taxable, asserting that the sales were made at the place of delivery to the railroads, and that the transactions are and were therefore transactions in interstate commerce and exempt from the tax under the provision of Section 73-1308, A.C.A.1939, and forbidden by the Federal Commerce Clause. Art. 1, § 8, Cl. 3.

The tax is levied against gross proceeds of sales. " 'Gross proceeds of sales' means the value proceeding or accruing from the sale of tangible personal property * * *." Section 73-1302, A.C.A.1939. Under the statement of facts given, the proceeds of these sales accrued to the taxpayer in the state of Arizona. The taxpayer takes the position that before the tax can accrue

there must be a sale; that there can be no sale without the transfer of title and possession; and that title and possession pass at the time of delivery (in this case to the carrier). In support of this proposition it offers as authority the holding in State v. Hendrix, 56 Ariz. 342, 107 P. 2d 1078; McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876; and McLeod .v. J. E. Dilworth Co., 322 U.S. 327, 349, 64 S.Ct. 1023, 1030, 88 L.Ed. 1304, 1319. In the Berwind-White case, Mr. Justice Stone emphasized that the delivery was in New York to the buyer there. The tax, he says, "is conditioned upon events occurring within the state either transfer of title or possession of the purchased property, or an agreement within the state, 'consummated' there, for the transfer of title, or possession."

A study of the facts and holdings in the various cases including McGoldrick v. Berwind-White Coal Min. Co., supra; McLeod v. Dilworth Co., supra; McGoldrick v. Felt & Tarrant Mfg. Co., 309 U.S. 70, 60 S.Ct. 404, 84 L.Ed. 584; J. D. Adams Mfg. Co. v. Storen, 304 U.S. 307, 58 S.Ct. 913, 82 L.Ed. 1365, 117 A.L.R. 429; General Trading Co. v. State Tax Commission, 322 U.S. 335, 64 S.Ct. 1028, 88 L.Ed. 1309; and the analyses and observations on these cases contained in articles appearing in 57 Harvard Law Review at pages 40 (Wm. B. Lockhart) and 1086 (Thomas Reed Powell), indicates that not all of the tax-able events must absolutely occur and be consummated in the taxing state.

It is true that in the Dilworth case [322 U.S. 327, 64 S.Ct. 1025] there is language from which appellant gains comfort and has support. That case involved the application of an Arkansas sales tax to Tennessee corporations with home offices and places of business in Tennessee, not qualified to do business in Arkansas and having neither sales office, branch plant nor any other place of business in that state. Orders were solicited in Arkansas by agents domiciled in Tennessee or by mail or telephone. As the court said, "In short, we are here concerned with sales made by Tennessee vendors that are consummated in Tennessee for the delivery of goods in Arkansas." The holding forbad the imposition of the tax by the state of the buyer. The facts of that case are in no wise comparable with the facts here.

In McGoldrick v. Felt & Tarrant Mfg. Co., supra, the Supreme Court of the United States upheld a sales tax imposed by New York City on transactions which were more involved in interstate commerce than are those of the appellant herein. Du-Grenier, Inc., was a Massachusetts corporation with its factory and main office in that state. It made and sold automatic vending machines, all sales throughout the United States being handled by an exclusive agent who had an office in New York. The sales in New York City were made by the agent's solicitations of orders. The

prospective purchaser signed either an order or a conditional sale contract on partial payment. These were forwarded to the Massachusetts office, and if accepted there, the merchandise was shipped direct to the purchaser in New York City, who paid the freight. In other words, the machines were shipped f. o. b. the factory or main office in Massachusetts. On the authority of its holding in the Berwind-White Coal Mining Co. case, the court sustained the New York sales tax. The court specifically said "the tax so laid does not infringe the commerce clause," (Chief Justice Hughes, Justice McReynolds, and Justice Roberts dissenting).

Mr. Justice Douglas (Justices Black and Murphy concurring) in his dissent in the Dilworth case appraised the holding of the court in McGoldrick v. Felt & Tarrant Mfg. Co. as follows: It

"* * * makes plain that the transfer of possession need not be by the seller, for in that case, as in the present one, deliveries were made by common carriers which accepted the goods F. O. B. at points outside the State. In terms of state power, receipt of goods within the State of the buyer is as adequate a basis for the exercise of the taxing power as use within the State. And there should be no difference in result under the Commerce Clause where, as here, the practical impact on the interstate transaction is the same."

In further rejection of attaching any significance to the seller's completion of his part of the contract in his home state, Mr. Justice Douglas says:

"It is no answer to say that the Arkansas sales tax may not be imposed because the out-of-state seller was 'through selling' when the tax was incurred. That was likewise true of both the use tax cases, including General Trading Co. v. State Tax Commission, 322 U.S. 335, 64 S.Ct. 1028, 88 L.Ed. 1309, and the sales tax decision in McGoldrick v. Felt & Tarrant Mfg. Co. The question is whether there is a phase of the interstate transaction on which the State of the buyer can lay hold without placing interstate commerce at a disadvantage. There is no showing that Tennessee was exacting from these vendors a tax on these same transactions or that Arkansas discriminated against them. I can see no warrant for an interpretation of the Commerce Clause which puts local industry at a competitive disadvantage with interstate business. If there is a taxable event within the State of the buyer, I would make the result under the Commerce Clause turn on practical considerations and business realities rather than on dialectics. If that is not done, I think we should retreat from the view that interstate commerce should carry its fair share of the costs of government in the localities where it finds its markets and adopt the views expressed in the dissent in the Berwind-White case."

In State v. Hendrix, 56 Ariz. 342, 107 P.2d 1078, 1080, contracts between publishers and the State for the sale of books pro-

vided that the books would be delivered f. o. b. cars at a central depot in Chicago. Construing these contracts the court said:

"Under these contracts the books became the property of the state when delivered to the carrier at any central depot in Chicago. The state became responsible for transportation charges from point of delivery to point of destination and if the books were lost or destroyed in transit the loss would be the state's. When parties have agreed, as here, that the seller may ship from a central depot in a given city, a delivery by the seller to a carrier at such a depot is a delivery to the buyer and constitutes full performance of the seller's obligation to make delivery, and in such case the delivery passes the title to the buyer and the risk of loss or injury in transit is on the buyer.  *  *  *"

This rule, though applicable to the general law of sales for locating the incidence of loss in transit or other questions arising among buyer, seller, and carrier, is not necessarily applicable for the purpose of taxation, as is pointed out by Mr. Justice Rutledge in his special opinion, concurring in General Trading Co. v. State Tax Commission, supra, and in International Harvester Co. v. Dept. of Treas. of Indiana, 322 U.S. 340, 64 S.Ct. 1019, 1030, 88 L.Ed. 1313, and dissenting in McLeod v. J. E. Dilworth Co., supra, in the following excerpt [322 U.S. 340, 64 S.Ct. 1032]:

"*  *  *  Surely the state's power to tax is not to turn on the technical legal effect, relevant for other purposes but not for this, that 'title passes' on delivery to the carrier in Memphis and may or may not so pass, so far as the record shows, when the Minnesota shipment is made to Iowa. In the absence of other and more substantial difference, that irrelevant technical consideration should not control. However it may be determined for locating the incidence of loss in transit or other questions arising among buyer, seller and carrier, for purposes of taxation that factor alone is a will-o'-the-wisp, insufficient to crux a due process connection from selling to consuming state and incapable of increasing or reducing any burden the tax may place upon the interstate transaction."

My interpretation of the various late decisions of the Supreme Court above referred to leads me to believe that the tax was lawfully imposed and its collection will not be in contravention of the Federal Commerce Clause. In view of the fact that the appellant-taxpayer was an Arizona corporation with its principal place of business in Phœnix and doing business here; that it took the orders in question here; that it made the contracts here; that it received the sales price here; and here gave the orders and directions to have the merchandise purchased delivered to the cars f. o. b. directed to the individual purchasers, I believe that there were sufficient taxable events within the state of Arizona to furnish all the underpinning necessary for the validity of the imposition of the tax. The appellant was through selling

when it collected the sales price. That is when the tax was incurred. I do not believe that upon the mere incidence of the deliveries to the non-interested carriers the taxpayer should be allowed to take refuge behind the Federal Commerce Clause. The imposition of the tax does not impinge on the Commerce Clause and does not cause any undue burden on interstate commerce of the taxpayer. It is a local merchant and should pay its just share of the expenses of the government.

Accordingly I concur in the affirmance of the decision of the lower court.

MORGAN, Judge (dissenting).

The question to be decided here is: Are sales of merchandise made by a licensee under the Excise Revenue Act of 1935, c. 77, taxable where such sales have been consummated by delivery to the purchaser in another state?

Plaintiff-appellant is an Arizona corporation, with its principal place of business at Phœnix, engaged in the hardware and implement business, and is licensed under the 1935 Excise Revenue Act. During the years 1942 and 1943 plaintiff, pursuant to contract made in Arizona, agreed to sell and deliver to purchasers certain merchandise f. o. b. without the state of Arizona. In compliance with these agreements, there were delivered to the purchasers f. o. b. at St. Louis, Missouri, Trenton, New Jersey, and Cincinnati, Ohio, certain articles. All the purchasers were Arizona residents, and the equipment so sold and delivered was carried in interstate commerce to the buyers-purchasers in Arizona.

No facts or circumstances appear which would indicate an intention on the part of the seller and buyers that title and possession would not pass on the delivery to the carrier. The rule is, in the absence of evidence to the contrary, that "Under a contract of sale f. o. b. the point of shipment, the title passes at the moment of delivery to the carrier, that is, when the goods are placed on board cars or a vessel for transportation to the buyer." 55 C.J. 559, sec. 566, Sales; 46 Am.Jur. 608, sec. 442, Sales. Such is the rule of this jurisdiction. State v. Hendrix, 59 Ariz. 184, 124 P.2d 768; sections 52-517, 52-518, 52-543, A.C.A.1939.

A delivery is essential to the consummation of a sale, and the sale is considered made at the place of delivery, not where the agreement is entered into or where the purchase price is paid, but where the goods are delivered to the purchaser. 46 Am.Jur. 605, sec. 440, Sales:

"* * * In such case, the time and place of delivery are regarded as the time and place of sale, the carrier is deemed the bailee of the buyer for the purpose of transportation, and the seller is deemed the agent of the buyer in employing the carrier. Although the executory contract of sale is entered into in the jurisdiction in which the buyer resides and to which

the subject matter of the sale is to be shipped to him, either personally by the seller or through his authorized agent, the place of the executed sale is generally held to be the place where the property is set apart and delivered to the carrier; and it has been held that where an order is taken and payment of the price received, the order to be filled by delivery of the property to be thereafter separated from a mass, to a carrier at another place for transportation to the buyer, the place of sale is the place where the property is set apart and delivered to the carrier."

The text is supported by decisions from the United States courts and the courts of thirty states, among them Arizona. State v. Hendrix, supra. As to this rule, particular attention is called to Louisville & N. R. Co. v. United States, 267 U.S. 395, 45 S.Ct. 233, 69 L.Ed. 678; Illinois C. R. Co. v. United States, 265 U.S. 209, 44 S.Ct. 485, 68 L.Ed. 983; Pullman Palace Car Co. v. Metropolitan Street R. Co., 157 U.S. 94, 15 S.Ct. 503, 39 L.Ed. 632; The Mary and Susan, 1 Wheat. 25, 4 L.Ed. 27; The Merrimack, 8 Cranch 317, 3 L. Ed. 575; Golo Slipper Co. v. Hamilton Shoe Stores Co., 10 Cir., 43 F.2d 33.

It is the general rule under sales or business excise tax statutes similar to ours that where a licensee sells goods to a purchaser in the taxing state, but actually delivers the goods to the purchaser in another state, the taxation of the proceeds of such sales consitutes an unlawful burden on interstate commerce. Crew Levich Co. v. Commonwealth of Pennsylvania, 245 U.S. 292, 38 S.Ct. 126, 62 L.Ed. 295; Gwin, White & Prince v. Henneford, 305 U.S. 434, 59 S.Ct. 325, 83 L.Ed. 272; Anno. 117 A.L.R. 854. The same rule applies where a gross income tax is sought to be collected on intra as well as interstate business without apportionment. J. D. Adams Mfg. Co. v. Storen, 304 U.S. 307, 58 S.Ct. 913, 82 L.Ed. 1365, 117 A.L.R. 429; Anno. 89 A.L.R. 1440; 47 Am.Jur. 209, sec. 10, Sales and Use Taxes.

In recognition of this general principle, the excise revenue act which we have under consideration does not attempt to levy an excise tax upon the gross proceeds of sales or gross income derived from transactions in interstate commerce. Sec. 73-1308, A.C.A.1939. Wherever a transaction which involves both intra and interstate business is concerned, there is an apportionment provided for in the statute. Thus, only that portion of the income or proceeds of sales from all persons engaged in the business of transmitting long distance messages by telephone or telegraph, or transporting for hire freight or passengers by motor vehicles or railroads, or products such as oil or gas in pipes or conduits, arising from intrastate business, is taxable. Sec. 73-1303, (c) (9), A.C.A.1939. It will also be noted that those taxed as manufacturing, baling, etc., under the provisions of sec. 73-1303, (a) (1), and (c) (1), mining, quarrying, etc., by the provisions of (c) (9), supra, the val-

ue of the entire product, regardless of the place of sale rather than the sale price, is the basis for the tax. The tax in these cases is fixed for the manufacturing, etc., process rather than upon the sale of the articles. It is evident, however, that the legislature inserted the provision last mentioned because it had in contemplation that the proceeds of the sale of an article made beyond the territorial jurisdiction of the state would not be based upon a taxable event.

It is my view that the statutes in so far as sales are concerned contemplate the imposition of taxes on the gross income or the gross sales made in Arizona. The legislature doubtless recognized that the state had no jurisdiction beyond its boundaries and that an extraterritorial sale would not be taxable. It seems to be a fundamental rule that a state may not tax persons, property or interest not within its territorial jurisdiction. 47 Am.Jur. 202, sec. 5, Sales and Use Taxes; 26 R.C. L. 267, sec. 234, Taxation, also page 268, sec. 235; James v. Dravo Contr. Co., 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318.

We have held that while the tax in question is an excise revenue tax, in so far as retail sales are concerned it is fundamentally based upon the proceeds of sale, and if a sale is exempt, as where made to the United States government, the proceeds of such a sale cannot be the basis for a tax. Luke v. East Vulture Min.

Co., 47 Ariz. 220, 54 P.2d 1002; Arizona State Tax Comm. v. Frank Harmonson Co., 63 Ariz. 452, 163 P.2d 667.

It would seem to be obvious that the state has no power to impose or collect a tax on a sale which has been consummated beyond its territorial boundaries. McLeod v. J. E. Dilworth Co., 322 U.S. 327, 64 S.Ct. 1023, 1025, 88 L.Ed. 1304. In this case an order was taken in Arkansas by traveling salesman, delivery was made to a carrier in Tennessee. The court said: "For Arkansas to impose a tax on such transaction would be to project its powers beyond its boundaries and to tax an interstate transaction." I find no cases under an excise or sales tax similar to ours where taxes have been collected on the proceeds of sales on property where the sales were consummated by delivery to the purchaser without the boundaries of the taxing state. We discussed this matter in the late case of Crane Co. v. Arizona State Tax Comm., 63 Ariz. 426, 163 P.2d 656, 661, and pointed out that sales taxes do not unconstitutionally burden interstate commerce where imposed upon sales of property shipped from without the state "provided, however, that the delivery of the merchandise is made to the purchaser in the taxing jurisdiction either directly from such extrastate source or through the offices of the seller within the taxing state; * * *" While we did not have occasion in that case to determine whether a sale, such as we have under considera·

tion, that is, where the delivery has actually been made in another state, is subject to the tax, the converse to what we said in the Crane Co. case would seem to be true. That is to say, if the sale was made without the jurisdiction of the taxing state, as here, by delivery without the state, the tax cannot be imposed upon the proceeds of such sale. As I have stated, no case has held that such a sale is taxable.

It is apparent that an attempt to tax in Arizona the proceeds of a sale made in another state would unquestionably constitute a burden upon interstate commerce. So in this case, the places of these sales being respectively Missouri, New Jersey and Ohio, each of these states could impose similar taxes, and the result would be multiple taxes and an undue burden on interstate commerce. J. D. Adams Mfg. Co. v. Storen, supra; J. B. Simpson, Inc., v. O'Hara, 277 Mich. 55, 268 N.W. 809; Montgomery Ward & Co. v. Fry, 277 Mich. 260, 269 N.W. 166; Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944.

An examination of the annotations in 89 A.L.R. 1440, 110 A.L.R. 1491, 117 A.L.R. 852, and 128 A.L.R. 900, clearly discloses that no court has yet held the proceeds of a sale taxable except where delivery has been made to the purchaser in the taxing jurisdiction. The taxable event, to-wit, the sale, must occur in the taxing jurisdiction. We think the case of Western Live Stock v. Bureau of Revenue, supra, clearly illustrates that point. There the question before the court was whether under the sales or license tax law of New Mexico, advertising received through interstate commerce and published in a paper circulated in New Mexico and other states, was taxable. The court held that although the advertising was received in and circulated in interstate commerce, since the taxable event, to-wit, the actual printing and publication occurred in New Mexico, the transaction was taxable. It is pointed out in this case that there would be no possibility of other jurisdictions taxing the same transaction, and therefore the tax in New Mexico would not constitute an undue burden on interstate commerce.

I cannot agree with Justice LA PRADE'S analysis of either of the McGoldrick cases. In McGoldrick v. Berwind-White Coal Min. Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876, the ruling of the court pertained wholly to shipments which originated outside the City of New York, but where actual deliveries were made within the city. In two instances the coal company made shipments f. o. b., one from its mines in Pennsylvania, and the other at the pier in Jersey City, N. J. The court left the question as to these two items to the New York court, on the theory that it was a local question, since the Act provided that "any transaction originating and/or consummated outside the territorial limits of

the city", Laws N.Y.1943, Ex.Sess., c. 815, as amended by Laws 1934, Ex.Sess., c. 873, would not be taxable. Chief Justice Hughes dissented, with joinder by Justices McReynolds and Roberts.

Judge LA PRADE leans heavily upon the opinion of the supreme court in the case of McGoldrick v. Felt & Tarrant Mfg. Co., 309 U.S. 70, 60 S.Ct. 404, 405, 84 L.Ed. 584. The Judge's statement that the machines were shipped f. o. b. factory or main office in Massachusetts is not borne out by the record. The court in that case states:

"The sales in the city, when not of machines located at the New York office, are effected through solicitations of orders by the agent, which takes from the prospective purchaser a signed order or a contract for a conditional sale on partial payment, which is forwarded by the agent to the Massachusetts office. If accepted there the order is filled by shipping the purchased machine by rail or truck direct to the purchaser in New York City, who pays the freight."

It is evident from this that the actual delivery was made in New York City, and not at the point of shipment. The fact that the purchaser must pay the freight is not equivalent to a transaction where the shipment is made f. o. b. shipping point. So far as may be determined from the opinion, the shipments may have been c. o. d. New York.

I am satisfied that although the facts here are dissimilar the rules laid down by the Missouri supreme court in American Bridge Co. v. Smith, 352 Mo. 616, 179 S.W.2d 12, 157 A.L.R. 798, and by the United States Supreme Court in McLeod v. Dilworth Co., supra, construing the Arkansas retail sales act are applicable here. The imposition of a tax on the sales in controversy is wholly beyond the scope of our excise tax law, and for the reason stated void under the interstate commerce clause. In order that a transaction be taxable within the state, the taxable event, here the sale, must have occurred within the territorial boundary of the state. Any other holding would lead to confusion. If we say that a sale made in Ohio or Missouri is taxable here simply because the contract was entered into in this jurisdiction and the purchase price paid in Arizona, we would also have to hold that where a merchant in Arizona receives an order either personally or by mail for the delivery of goods in another state, the proceeds of such a sale would be taxable. The fact that the merchant happens to have a place of business in Arizona should not compel him to pay taxes on an extrastate sale. It seems to be unquestioned that if a foreign merchant sends a solicitor to Arizona, who takes an order for merchandise to be shipped to the purchaser in Arizona, such a sale is not taxable. McLeod v. Dilworth Co., supra. A foreign merchant would have to be transact-

ing business in Arizona before the tax would operate against him. If, on the other hand, we hold that a local merchant, who has a place of business and pays taxes in Arizona on his property, has the right to accept an order for merchandise and make the delivery in another state for shipment to Arizona, without being subject to tax on the proceeds of such a sale, he is placed on an equality with the nonresident merchant. Such a ruling, it seems to me, makes sense and is fully supported by the law.

For the reasons stated, I dissent from the majority opinion. The judgment should be reversed.