**KANSAS CITY, Missouri, a municipal corporation, Plaintiff-Appellant,**

v.

**TRAVELERS INSURANCE COMPANY, a corporation, Defendant-Respondent.**

No. 22281.

Kansas City Court of Appeals.

Missouri.

Dec. 5, 1955.

David M. Proctor, Maurice E. Benson, Kansas City, for appellant.

Clay C. Rogers, Kansas City, Rogers, Field & Gentry, Kansas City, of counsel, for respondent.

CAVE, Judge.

This is a proceeding under the Declaratory Judgments Act, Ch. 527 RSMo 1949, V.A.M.S. For brevity, we shall refer to the appellant as the "city" and to the respondent as the "company".

The fundamental question presented is whether the city, under Sec. 148.440 RSMo 1949, V.A.M.S. has the authority to levy and collect an occupation license tax from the defendant company for the 6 separate individuals, firms and corporations doing its business in the city, in addition to the license tax which the company has paid or tendered for the location of its principal office and place of business in the city. The trial court found the issues for the company, and the city appealed. The maximum amount claimed by the city is $4,200, consequently this court has jurisdiction.

There was an agreed statement of facts and we shall refer to such as are necessary during the course of the opinion. The defendant was a foreign insurance company licensed to do business in this state and was engaged in the business of writing life, accident and health, personal liability and workmen's compensation insurance. It maintains a branch office in Kansas City where the business of the company, for a specified territory, is transacted. At all times in issue, the company had appointed six agents, who operate as independent contractors; and are variously known as "insurance counsellors, insurance agents, brokers, insurance agencies". Under their appointment, said agents are not employees of the company, and the sole basis of their compensation is the commission which the agents receive for insurance tendered by them and accepted by the company. The "question of these agencies or firms acting as brokers is not at issue in this proceeding; * * *". The company is not a fire insurance company.

It is conceded that the city ordinances are sufficiently broad to require the company to pay an occupation license tax for each separate office or agency doing business for it in Kansas City, and we need not review such ordinances. It is also conceded that the city's sole statutory authority to make such a levy is Sec. 148.440. The pivotal point of dispute is whether this section qualifies or restricts the authority of the city to make such a levy. The section reads:

"1. The agent or agents of any such insurance company doing insurance

business in any city in this state, having a population of more than five hundred thousand inhabitants, in addition to the tax on premiums as above provided for against such companies, shall also pay to the collector of said city, if said city shall so declare by ordinance, on or before the first day of February of each and every year, not more than the sum of two hundred dollars for each such fire insurance company, and *for each such other insurance company not more than the sum of one hundred dollars,* for the use of said city, which sum shall be considered in full for and in lieu of all taxes and licenses which said city may possess the power to impose on such agencies; and such collector shall, upon such payment being made, issue to such agent or agents a license, in the name of such city, to do the business of such agency for one year, which license shall be renewed from year to year, if demanded. *This section shall be construed as authorizing but one such tax for each such insurance company in each such city regardless of the number of agents which such company may have in such city.*

"2. Any such insurance company and any insurance agent doing insurance business in any city in this state having a population of more than one hundred thousand inhabitants and less than five hundred thousand inhabitants, in addition to the tax on premiums as above provided for against such companies, shall also pay to the collector of said city, if said city shall so declare by ordinance, on or before the fourth day of January of each and every year, not more than the sum of two hundred dollars for each such fire insurance company, and *for each such other insurance company not more than the sum of one hundred dollars,* for the use of said city for each agent, agency or office doing an insurance business for such company in said city; which sum shall be considered in full for and in lieu of all taxes and licenses which said city may possess the power to im-

pose on such agencies; and such collector shall, upon such payment being made, issue to such agent or agents a license, in the name of such city, to do the business of such company at such agency or office for one year, which license shall be renewed from year to year, if demanded."

All italics in this opinion are supplied.

■ In construing a statute and arriving at the intent thereof, it is proper and helpful to consider its historical background. The forerunner of Sec. 148.440 was first adopted in 1865, and Chapter 90, Sec. 12 of the General Statutes of that year provided that: "The agent or agents of any foreign insurance company, doing * * * business in the *city of St. Louis,* in addition to the tax on gross premiums, as above provided for * * * shall also pay to the collector * * *, the sum of one hundred dollars for the use of said city, which sum shall be considered in full for and in room of all taxes and licenses which said city may possess the power to impose on such agencies; and such collector shall, * * *, issue to such agent or agents a license * * * for the carrying on of the business of such agency for one year, * * *, and shall not be subject to any other taxation of any kind whatever by said city."

With some minor amendments this section was carried into the Revisions of 1879, 1889 and 1899. During that interim the section was amended to become applicable to any city "having a population of more than one hundred thousand". It is conceded that in 1890, Kansas City had a population in excess of 100,000, and therefore the section became applicable to Kansas City as well as St. Louis.

In 1903, and while the statute read as above indicated, this court, in Kansas City v. Oppenheimer, 100 Mo.App. 527, 75 S.W. 174, reviewed the statute and held that Kansas City could not, by ordinance, provide for the collection of a license tax from an insurance company doing business in the city and also a separate license tax from its

agent or agents. The court said in 100 Mo. App. at page 531, 75 S.W. at page 175: "It follows that the passage of an ordinance like that in issue, requiring such companies to pay an annual license tax of $100, and also its agents to pay a further license of $25 each, is manifestly the exercise of a power greatly in excess of that permitted to it by the statute. * * * The ordinance so far contravenes the restriction imposed by the statute on the power of the city, under its charter, to tax and license foreign insurance companies and insurance agencies, that we must hold it invalid."

In 1909, Laws of 1909, pp. 607–608, the section was again amended in certain respects. The most important amendment is the addition of the language which is found in *paragraph 2* of the 1949 Revision as above quoted. The language of *paragraph 1* of the Revision of 1949 has remained substantially the same since the Revision of 1889, except the last sentence thereof. One of the effects of the amendment of 1909 was to make two classifications of cities for the purpose of levying a license tax on insurance companies and agents. The first classification applied to cities of "more than five hundred thousand inhabitants,"—the City of St. Louis; and the second classification applied to cities having a population of "more than one hundred thousand inhabitants and less than five hundred thousand inhabitants,"—Kansas City.

The last amendments were made in 1919, Laws of 1919, pages 396–397. The first amendment, which was made applicable to both St. Louis and Kansas City provided: "* * * two hundred dollars for each such fire insurance company, *and for each such other insurance company not more than the sum of one hundred dollars*".

The second amendment, which was inserted in the middle of the section, provided: *"This section shall be construed as authorizing but one such tax for each such insurance company in each such city regardless of the number of agents which such company may have in such city"*.

The city argues that the last quoted amendment, "This section shall be construed * * *", applies only to that part of the section preceding it, or to St. Louis. The company contends that such amendment applies to the entire section, or to both St. Louis and Kansas City. Thus the line of controversy is sharply drawn. What do the words "this section" mean?

For more than a century, it has been the policy of this state to publish the revised statutes by arranging the general subjects of legislation into "Chapters", which generally incorporate most of the statutory law affecting a certain subject matter; and the "Chapters" are divided into "Articles", which generally incorporate the statutory law on a limited branch of the general subject; and "Articles" are divided into "Sections", which generally relate to a still more limited field on the general subject of legislation. Thus, Chapter 148 RSMo 1949, V.A.M.S., relates to the general subject of "Taxation of Financial Institutions". The "Chapter" is divided into certain subject matters, such as "Banking Institutions", "Insurance Companies", etc.; and the subject of taxation of insurance companies is divided into "Sections". It is conceded that the only statutory authority given the cities of St. Louis and Kansas City to levy an occupation tax on insurance companies is Sec. 148.440, but that section also limits such authority. Consequently, if the sentence, *"This section* shall be construed as authorizing but one such tax for each such insurance company in each such city regardless of the number of agents which such company may have in such city", is applicable to the entire section, then the company, in the instant case, may not be required, by ordinance, to pay more than one occupation tax regardless of the number of agents it may have in Kansas City.

Generally, when the words "this section" are used, they mean the entire section, and unless the contrary clearly appears, they must be so construed. Rankin v. Herod, C.C., 130 F. 390, 391; DuPont v. Commissioner of Internal Revenue, 3 Cir., 98 F.2d 459, 461; United States v. Healey,

160 U.S. 136, 16 S.Ct. 247, 252, 40 L.Ed. 369; In re Radford, D.C., 8 F.Supp. 489, 495; Owen v. Off, Cal.App., 218 P.2d 563, 568; Town of Martinsville v. Frieze, 33 Ind. 507, 509–10.

In construing this quoted sentence, it is proper and helpful to keep in mind that this section has always been written and published in one continuous paragraph, in all the revisions from 1879 until the Revision of 1949; at which time the *Revision Committee* divided it into two paragraphs as indicated in the above quotation of said section. It may be conceded that the committee was authorized, by Sec. 3.060, to divide the section into paragraphs, but it could not do so in such a manner as to "alter the sense, meaning, or effect of any legislative act * * *". The *committee* merely compiled and arranged the various statutory enactments. Vol. 3, V.A.M.S., page 206. It had no legislative authority. Ex parte Hutchens, 296 Mo. 331, 246 S.W. 186.

Furthermore, a section or an Act should not be construed or considered as a new section or new Act by reason of it being inserted in the Revised Statutes. It is simply continued with the same force and meaning as originally enacted. Sec. 1.120 RSMo 1949, V.A.M.S.; State ex rel. Atty. Gen. v. Heidorn, 74 Mo. 410; Strottman v. St. Louis, I. M. & S. Ry. Co., 211 Mo. 227, 109 S.W. 769; Timson v. Manufacturers Coal & Coke Co., 220 Mo. 580, 119 S.W. 565. Consequently, we must construe this section as it appeared in the various revisions from 1919 until 1949, since there were no *legislative* amendments or changes during that period of time.

There are certain general rules governing statutory construction. The primary rule is to ascertain the lawmakers' intent, from the words used, if possible; and to put upon the language of the legislature, its plain and rational meaning, and to promote its object and the manifest purpose of the statute. American Bridge Co. v. Smith, 352 Mo. 616, 179 S.W.2d 12, 15, 157 A.L.R. 798. It is also the rule that " 'taxing statutes should be construed strictly against the taxing authority unless a contrary legislative intent appears' ". In re Union Electric Co. v. Coale, 347 Mo. 175, 146 S.W.2d 631, 635. It has also been said in statutory construction that "the law favors constructions which harmonize with reason, and which tend to avoid unjust, absurd, unreasonable or confiscatory results, or oppression". Laclede Gas Co. v. City of St. Louis, 363 Mo. 842, 253 S.W.2d 832, 835; Vol. 26, Mo.Dig., Statutes, ▬ and 205 et seq. In this connection it is interesting to note that the stipulation of facts recites that the six agencies, for each of which the city claims the company must pay a tax, also represent "many other insurance companies". If the section be given the construction claimed by the city, then each other insurance company must pay a license tax for each such agency in Kansas City, but not in St. Louis. Furthermore, if an insurance company is doing business in both St. Louis and Kansas City (and most of them are), and was represented by 30 agencies in St. Louis and by only 10 agencies in Kansas City, then, under the city's construction of this section, the company would pay $100 license tax for *all agencies* in St. Louis and $1,000 for the *10 agencies* in Kansas City. This seems an "absurd" and "unreasonable" construction.

Another general rule applicable in the construction of a statute or ordinance, where the language is ambiguous or doubtful, is that the construction which has long been given by those charged with the duty of executing it is entitled to special consideration, though not binding on the courts. For a collection of authorities discussing this subject, see Vol. 26, Mo.Dig., Statutes, ☞218, 219. In the Oppenheimer case, supra, this court, in considering the statute as it then read, held, in effect, that the language used was ambiguous and of doubtful meaning. We do not believe the subsequent amendments materially clarified the purpose and meaning of the statute, except the amendment of 1919, inserting the sentence under consideration. If anything, some amendments aggravated the ambiguity and uncertainty of the meaning and purpose.

Consequently, the construction given the statute and ordinances by the city for a long period of time is worthy of serious consideration.

In this connection it is stipulated that the ordinance upon which the city bases its claim was passed and became effective July 1, 1920; and that "For many years, the * * * city has consistently interpreted the laws of Missouri and its ordinances to require the payment of only one license tax for each insurance company doing business in Kansas City, regardless of the number of appointed agents, and that interpretation by the * * * city continued up to the year 1952". Since that time, the city has claimed the right to levy a license tax on each agent or agency of each insurance company doing business in the city, and in addition, a license tax on the office or place of business of each such company, if it maintains such an office; and that each company must pay such license taxes.

It is possible that the division of Sec. 148.440 into paragraphs by the Revision Committee of 1949 contributed to the city authorities placing a different construction upon the section than had been done during the prior thirty years. But we have already said the committee could not so rearrange the section, or any section, in manner that would alter the sense, meaning or effect of the section as it had been adopted by the legislature.

■ We recognize that the general rules for the interpretation of statutes are only intended to aid in ascertaining the legislative intent, and are not for the purpose of controlling the intention or of confining the operation of the statute within narrower limits than was intended by the lawmakers. Norberg v. Montgomery, 351 Mo. 180, 173 S.W.2d 387. But we return to the first and fundamental question, what did the lawmakers intend when they adopted the amendment "This section shall be construed * * *"? For us to hold, as the city contends, that the quoted words referred only to that part of the section preceding, and not to any part of the section following, would be placing a strained and an unauthorized construction on the sentence. It certainly does not "clearly appear" that the legislature intended that the sentence should apply or control only a part of *the section*. Had such purpose been intended the sentence could have been, and no doubt would have been, written differently and more specifically.

The mere fact that the quoted sentence was inserted in the middle of the one paragraph section would not necessarily lead to the conclusion that it was intended to apply only to that part of the section preceding it.

■ The city strenuously argues, and correctly so, that the wording of paragraph 2 of the section is, in certain respects, different from the wording of paragraph 1, and poses the question, why should the section have divided St. Louis and Kansas City into separate classifications if it was intended that the same license tax should be applicable in each instance? A reading of the section discloses that there are differences in the wording of the two paragraphs, and such differences lend color and support to the city's contention that there are separate standards fixed for the licensing of insurance companies and agents to do business in such cities. However, it must be kept in mind that the amendment dividing the section into classification of cities was adopted in 1909, and no doubt the ambiguity and confusion so created resulted in the amendment of 1919, by which amendment the legislature stated, clearly and succinctly, how "this section shall be construed * * *". The legislature having clearly placed its construction upon "this section", the courts are not at liberty to select certain words or phrases thereof and hold that the legislative construction does not apply to such parts of the section.

■ It is our conclusion that Sec. 148.440 does not authorize Kansas City to adopt an ordinance levying a separate occupational license tax upon each agent or agency of an insurance company doing business

within the city, *and to require the company to pay such tax.*

It follows that the judgment of the trial court should be sustained. It is so ordered.

All concur.