STATE OF MISSOURI at the relation of THE WESTERN UNION TELEGRAPH COMPANY, a Corporation, Relator, v. AL MARKWAY, Collector of the Revenue of the County of Cole.—110 S. W. (2d) 1118.

Court en Banc, December 9, 1937.

*Jones, Hocker, Gladney & Grand, Sullivan, Reeder & Finley, Lon O. Hocker* and *Ralph T. Finley* for relator; *Francis Stark* and *Robert C. Barnett* of counsel.

*Roy McKittrick,* Attorney General, and *James L. HornBostel* for respondent.

978

TIPTON, J.—This is an original proceeding in mandamus to compel respondent, as collector of revenue of Cole County, Missouri, to accept from relator a designated and tendered sum in full satisfaction of certain taxes for the years 1933, 1934 and 1935, without penalties, interest and commissions as demanded by respondent.

As of June 1, 1932, relator made return of its property in this State assessable by the State Tax Commission. As provided by Articles IV, XIII and XV of Chapter 59 of the Revised Statutes of Missouri, 1929, relator was notified by the State Tax Commission that a tentative assessment of $6,556,192 had been made on its property in Missouri for taxes payable in the year 1933, and that at a hearing before that commission and also before the State Board of Equalization the assessment had been approved in that sum. Before this assessment was apportioned and certified by the State Tax Commission to the various taxing subdivisions of this State, relator obtained a temporary injunction in the United States District Court against the members of that commission, its secretary and the State Auditor, restraining them from certifying to the various taxing subdivisions of the State their apportionment of the assessment in excess of $3,440,000, the amount that relator contended the assessment should have been. At a final hearing that court dismissed relator's bill, which judgment was affirmed by the United States Circuit Court of Appeals.

As of June 1, 1933, relator made its return to the State Tax Commission of its taxable property in this State, and that commission placed on it a tentative assessment of $6,505,013, for taxes payable

in the year 1934. This assessment was finally approved by the State Board of Equalization in the sum of $6,504,684. Relator obtained a temporary injunction in the United States District Court similar in all respects to the suit involving the 1932 assessment. This injunction enjoined the certification of that portion of the assessment in excess of the amount admitted to be reasonable.

Again, in 1934 the State Tax Commission made a tentative assessment of $6,281,857 for taxes payable in the year 1935, which assessment was finally approved by the State Board of Equalization. Again relator obtained a temporary injunction similar in all respects to the first two injunctions.

The State Tax Commission duly caused to be certified to the various counties in this State those portions of the assessments as of June 1, 1932, June 1, 1933 and June 1, 1934, which were not in dispute, and the taxes based on these assessments were paid by relator before becoming delinquent.

After the decision of the Court of Appeals in the first suit, relator dismissed the second and third suits, and damages on the various injunction bonds in the third suits were waived.

In October, 1936, the State Tax Commission apportioned and caused to be certified to the various counties in the State those portions of the three assessments as of June 1, 1932, June 1, 1933, and June 1, 1934, respectively, which had not theretofore been certified, and State and county taxes were levied and extended on the tax books in the various counties, including Cole County, for the years 1933, 1934 and 1935. Respondent demanded of relator the payment of the taxes, interest and collector's commissions based on such additional assessments for such years in that county as follows:

| Year | Amount of Tax | Amount of Interest | Collector's Commissions |
|------|---------------|--------------------|-----|
| 1933 | $ 406.68 | $ 89.47 | $ 9.92 |
| 1934 | 475.03 | 104.51 | 11.59 |
| 1935 | 443.72 | 53.25 | 9.94 |
| | $1,325.43 | $247.23 | $31.45 |

On December 9, 1936, relator tendered to respondent the sum of $1325.43 in full payment for such additional taxes, without interest and commissions, and demanded a receipt for these taxes. Respondent refused such tender because it did not include the interest and commissions. It is the contention of relator that such additional taxes did not become delinquent prior to January 1, 1937.

"The power to levy and collect taxes is purely statutory, and has been confided to the Legislature and not the courts." [State ex rel. Parish v. Young, 327 Mo. 909, l. c. 915, 38 S. W. (2d)

1021.] "It is well established that the right of the taxing authority to levy a particular tax must be clearly authorized by the statute, and that all such laws are to be construed strictly against such taxing authority." [State ex rel. Ford Motor Co. v. Gehner, 325 Mo. 24, 1. c. 29, 27 S. W. (2d) 1.]

With these principles of law in mind, we look to the statutes of this State to see when taxes on telegraph companies become delinquent. Section 10066, Revised Statutes 1929, provides that taxes against telegraph companies shall be levied and collected in the same manner as is provided by law for the taxation of railroad property. Section 9854 gives to the State Tax Commission original jurisdiction to assess telegraph companies' operative property in the same manner as railroad property, subject only to the approval of the State Board of Equalization. When operative property of a utility is assessed, each county in which the utility has property receives an allocated percentage of the total property of the utility. [Sec. 10024.] By Section 10028 the county court is given authority to fix and determine the rate of levy and to levy the tax. The county clerk enters on the railroad tax book the assessment certified and turns same over to the county collector for collection of the tax. [Secs. 10030 and 10032.] Taxes against railroads shall be treated as delinquent if not paid "on or before the first day of January next after the same shall have been assessed and levied." [Sec. 10035.] Section 9945 as amended in 1933 provides for the penalty to be collected if the tax becomes delinquent.

Certainly, the various county courts in levying taxes on the assessments in 1932, 1933 and 1934, as certified to them by the State Tax Commission, could not make any levy on those portions of the assessments which were enjoined because they did not have such disputed portions of the assessments before them. No levy upon the disputed portions of the assessments could be made until same were certified to the various counties in October, 1936. Section 10028 requires the levy to be made by the county court each year, and in case any railroad taxes are omitted for any year or years the court is required to make a levy for such year or years, "which taxes, when so levied, shall become due and payable, delinquent and subject to penalty as other railroad taxes now are, and shall be recoverable as hereinafter provided."

Section 9854, among other powers given to the State Tax Commission, provides as follows: "To cause to be placed upon the assessment rolls omitted property which may be discovered to have, for any reason, escaped assessment and taxation, and to correct any errors that may be found on the assessment rolls and to cause the proper entry to be made thereon." Section 10021 provides for assessment of railroad property for any year or years which may have been

omitted or for which the court held the assessment to be irregular or void.

In the case of State ex rel. Hammer v. Vogelsang, 183 Mo. 17, 81 S. W. 1087, we held that where property omitted from taxation is subsequently assessed, the taxes thereon do not become delinquent until after expiration of the year in which such taxes were actually assessed. In that case we were construing Section 9789 which deals with real property, but we see no real distinction on principle between that section and the section dealing with railroads.

We, therefore, hold that the taxes in question could not become delinquent until January 1, 1937.

Nor are we impressed with the argument of respondent that relator's unsuccessful injunction suits prevented the taxes in question from being payable in the years 1933, 1934 and 1935, and, therefore, should be treated in equity as delinquent. In the injunction suits relator followed the method which we approved in the case of Bank of Carthage v. Thomas, 330 Mo. 19, 48 S. W. (2d) 930, to test whether the assessment was illegal. Respondent contends that because relator was not successful in the injunction suits, the writ in this case should not issue, as relator would not come into court with clean hands, citing the case of State ex rel. Hyde v. Jackson County Medical Society, 295 Mo. 144, 243 S. W. 341. If respondent's reasoning were followed, it would allow one who negligently or intentionally failed to make a return on his property for taxation (as in the Vogelsang case), to be assessed on his property for such years that the property was omitted and he would not be required to pay penalties on same, but where one pays taxes on the portion of a proposed assessment which is not in dispute and brings suit to test the validity of the disputed portion of the assessment, he would be required on equitable grounds to pay the penalties demanded on delinquent taxes. To do so we think would put a premium on dishonesty. In other words, respondent practically concedes that there is no statutory authority to require relator to pay delinquent penalties on the taxes in question, but does contend that we should rule that relator is liable because of equitable reasons. To do so, we would have to ignore the maxim that equity follows the law.

██ Respondent next contends that if relator is not liable for statutory penalties, it should be required to pay interest at the rate of six per cent; ". . . a tax is not a debt or in the nature of a debt, but is an impost levied by government, and . . . is not founded on contract, but operates *in invitum.*" [State ex rel. George v. Dix, 159 Mo. App. 573, l. c. 576, 141 S. W. 445. See, also, Cooley on Taxation (4 Ed.), sec. 22.] The taxes in dispute are not debts; therefore, we rule this point against respondent.

██ Respondent in his brief frankly admits that he is not en-

titled to commissions he demanded as no suit was brought to enforce the collection of the taxes, nor was any personal property seized. This admission is made on authority of the case of State ex rel. Davidson v. St. Louis-S. F. Ry. Co., 334 Mo. 127, l. c. 132, 66 S. W. (2d) 149, wherein we said:

"It will be noted that under this section of the general revenue law enacted in 1879, county collectors are allowed only one per cent for collecting either current or delinquent taxes, payable from the taxes collected, unless suit is brought or personal property seized."

From what we have said, it follows that our peremptory writ of mandamus should issue. It is so ordered. All concur, except *Hays, C. J.,* absent.