Miller HERN; Albert Hofman and Monroe Hofman, d/b/a Albert Hofman & Son; and Mitchell Petroleum Company, a corporation, Respondents,

v.

Milton CARPENTER, Director of Revenue, A. S. Arenson, Collector of Revenue, and John M. Dalton, Attorney General of the State of Missouri, Appellants.

No. 46217.

Supreme Court of Missouri,

Division No. 1.

April 14, 1958.

Opinion Modified on Court's Own Motion May 12, 1958.

Motion for Rehearing or to Transfer to Court en Banc Denied May 12, 1958.

John M. Dalton, Atty. Gen., Robert R. Welborn, Asst. Atty. Gen., Alphonso H. Voorhees, Sp. Asst. Atty. Gen., for (defendants) appellants.

George A. Spencer, William W. Beckett, Columbia, for (plaintiffs) respondents.

COIL, Commissioner.

Respondents, to whom we shall refer as plaintiffs, brought an action against the Director of Revenue, the Collector of Revenue, and the Attorney General, of the State of Missouri, in which they sought a judgment declaring that plaintiffs were not liable to pay Missouri sales tax on the sale and purchase of motor fuel to be used and used for purposes other than operation of motor vehicles on the state highways. The trial court's judgment declared the law to be as plaintiffs contended, and appellants, hereinafter called defendants, appealed. For the reasons to be stated, we hold that the trial court correctly construed the statutes and correctly declared the law, and that its judgment should be affirmed. (All section citations will refer to sections of RSMo 1949 and V.A.M.S. unless otherwise indicated.)

The essential question is whether paragraph 2 of section 144.030 exempts plaintiffs, who are farmers (purchasers), and a corporate distributor (seller) of motor fuel, from payment of sales tax on sales and purchases respectively of such fuel when the language of that section (144.030) is construed in connection with sections 142.020 and 142.230 of the motor vehicle fuel tax law. Despite the fact that the basic question resolves itself into a narrow one, it is nevertheless necessary to review the provisions of several statutes to bring the exact question into focus.

Sections 144.020 and 144.030 are two of the sections of the sales tax law. For present purposes, suffice it to say that section 144.020 provides for a tax equivalent to two per cent of the purchase price on retail sales of tangible personal property within the state, and that section 144.030 provides in paragraph 2, in part, that, "In order to avoid double taxation under the provisions of this chapter, no tax shall be paid or collected under this chapter upon the sale at retail of any motor fuel, subject to an excise or sales tax under another law of this state; * * *."

As indicated, sections 142.020 and 142.230 are two of the sections in the chapter providing for a motor vehicle fuel tax. Section 142.020, as amended, in so far as presently relevant, provides that in order to furnish funds for the construction and maintenance of state highways, etc., a license tax equal to three cents per gallon on gasoline received in this state to be sold for use in operating motor vehicles on the state highways is imposed upon every person receiving such gasoline in this state, and that it is presumed that all gasoline received in this state is to be sold to be used for and will be used for operating motor vehicles on the highways. The section provides further that the one receiving gasoline in this state, referred to in the statute as "the distributor," shall be liable for the tax on the gross number of gallons of gasoline received by him, and that he *shall pay* said tax to the Collector of Revenue, but that he shall, however, add the respective portion of the tax so paid to the selling price of each gallon and thus collect such tax from the purchaser, and that each subsequent seller shall collect the tax from

each subsequent purchaser by adding it to the selling price, so that the ultimate consumer will bear the burden of the tax as part of the price he pays for the gasoline. The section also provides that it is presumed that gasoline purchased by any person in Missouri is intended to be used and will be used to operate motor vehicles on the state highways.

Section 142.230 first sets forth that it is presumed that all gasoline sold in Missouri by any person was sold for use in operating motor vehicles on the state highways and further provides that anyone who purchases gasoline for any other purpose and who shall have paid or shall have been charged the tax described in section 142.020 shall be reimbursed and repaid the amount of the tax upon presenting a claim therefor to the Collector of Revenue in accordance with a prescribed procedure. The section provides further that the form of the claim shall be an affidavit setting forth certain information, and that no claim for refund shall be allowed unless the original sales slip executed at the time of sale indicates that the purchaser at the time he bought the gasoline declared to the seller his intention to use the gasoline for other purposes than to operate motor vehicles on state highways, and also declared at that time his intention to claim a refund of the tax paid, and that the seller must indicate that the purchaser so declared his intention by a certificate in the form prescribed. The section provides further that applications for refund must be filed within 120 days from the date of the original invoice or sales slip, and that upon approval by the Collector of Revenue of a claim filed, the tax is to be refunded by requisition upon the State Comptroller for a warrant on the State Treasurer, payable to claimant out of any fund appropriated by the legislature for that purpose.

The plaintiffs who are farmers sometimes purchase gasoline for uses other than operating motor vehicles on state highways and pay no sales tax on such purchases.

They do pay the 3¢-per-gallon license tax and sometimes make the necessary declarations of intention prescribed by the statute and apply for and receive refunds of the gasoline tax theretofore paid. Corporate plaintiff, a distributor, sells gasoline and pays to the Collector of Revenue the 3¢-per-gallon license tax and collects such tax so paid from purchasers, but collects no sales tax, even on sales made to persons who declare their intention in accordance with the statute to use the gasoline for purposes other than the operation of vehicles on the state highways and who declare their intention to claim a refund. Corporate plaintiff would be required to collect the sales tax at the time of sales to purchasers if the sales under those circumstances are subject to a sales tax (section 144.080, paragraph 3).

The sales tax act was approved in January 1934 and, at the time, the motor fuel tax law had been in effect for ten years. It is agreed that to trial time no sales tax had ever been collected on any sales of gasoline, whether or not it was sold to one executing the declarations of intention provided for by section 142.230. It is also agreed that the Missouri Director and Collector of Revenue, with the approval of the Attorney General, have indicated their intention to and have threatened to collect sales tax on the sale and purchase of gasoline when the plaintiffs (purchasers) make the declarations of intention heretofore described. Plaintiffs properly have sought construction of the statutes involved and a declaration of the applicable law through this declaratory judgment action.

It appears that the instant question may be resolved by determining the effect of this language of paragraph 2 of section 144.030: "no tax shall be paid or collected * * * upon the sale at retail of any motor fuel, subject to an excise * * * tax under another law of this state," when that language is construed in the light of and in connection with certain of the provisions of sections 142.020 and 142.230.

The tax provided for in section 142.020 is on *gasoline sold for use in operating motor vehicles on state highways* and, as noted, there is a presumption that *all gasoline sold or bought in Missouri is sold and bought for use in propelling motor vehicles on state highways*. It is correctly agreed by the parties that the motor fuel tax is an excise tax. Viquesney v. Kansas City, 305 Mo. 488, 266 S.W. 700, 702 [1]. Thus the question is further narrowed to whether gasoline which is sold and purchased to and by a purchaser who at the time makes the prescribed declarations of intention, is subject to the motor fuel tax. As we view it, the answer depends upon the meaning which properly should be ascribed to the words "subject to" as used in paragraph 2 of section 144.030.

Defendants contend that gasoline which is not in fact used for operating motor vehicles on highways is not included within the exemption of paragraph 2 of section 144.030, i. e., such gasoline is not "subject to" an excise tax under another law; and that the intention of the legislature not to include gasoline not in fact used to operate vehicles on state highways within the exemption noted is demonstrated by the fact that section 142.020 imposes a tax only on motor fuel *used* in propelling motor vehicles on public highways. While defendants recognize that the sections of the motor fuel tax law heretofore mentioned provide, in effect, for a presumption that all motor fuel will be subject to the motor fuel tax, they say such is only a rebuttable presumption and that the presumption, standing alone, does not establish the *fact* that the gasoline was to be or was used for highway purposes. Defendants say further that the presumption is completely rebutted and the fact of nonhighway use is established when the purchaser, in accordance with the provisions of section 142.230, declares his intention not to use the gasoline to operate motor vehicles on the highway and declares his intention to claim a refund of the tax.

From all of which defendants conclude that the gasoline sold and bought under the required declarations of intention was never "subject to" the motor fuel tax. Expressed differently, defendants claim that although gasoline bought and sold under the required declarations was *presumed* to have been *subject to* the license tax imposed by section 142.020, and although the license tax was in fact paid, nevertheless, upon the rebuttal of the presumption (accomplished, we suppose, by the presentation and approval of the claim for refund of the tax paid), the situation then is the same as though the presumption had never existed and, thus, the gasoline used for nonhighway purposes was never "subject to" the gasoline tax.

Plaintiffs answer that the only function of the declaration of intention not to use gasoline for highway purposes, and the declaration of intention to claim a refund for the gasoline tax paid, is to make the purchaser eligible for (and to preserve that eligibility) a refund, if he in fact does not use the gasoline in the operation of motor vehicles on the state highways, and if he desires to and does in fact complete and file a claim for refund within 120 days and if the claim is approved. Plaintiffs contend, however, that the mere making of the declarations of intention does not "convert the sale into the sale of 'non-highway use' motor fuel," and that the gasoline was "subject to" the gasoline tax when the distributor received it in this state.

Defendants remind us that a statute exempting from taxation is construed against the one claiming an exemption, and that no presumption is indulged in favor of the claimed exemption. Mississippi River Fuel Corp. v. Smith, 350 Mo. 1, 164 S.W.2d 370, 377 [7]. Such rule of construction, however, should not force a conclusion that the legislative intent was other than a reasonable construction of language used in the circumstances shows it to be. American Bridge Co. v. Smith 352 Mo. 616, 179 S.W.2d 12, 16 [6, 7], 157 A.L.R. 798. The parties agree that the

basic construction rule is to discover the lawmakers' intention and, if possible, effectuate that intention, Laclede Gas Co. v. City of St. Louis, 363 Mo. 842, 253 S.W.2d 832, 835 [2–4], and thereby attain the object and purpose of the statute, Kansas City v. Travelers Ins. Co., Mo.App., 284 S.W.2d 874, 878 [5–7].

The words "subject to" have a variety of meanings and what they mean in a given instance depends upon the context of their use and the object and purpose to be accomplished by the writing in which they are used. For example, as pointed out by defendants, in American Mfg. Co. v. Commonwealth, 251 Mass. 329, 146 N.E. 801, the court held that a Massachusetts statute providing for the deduction from the value of a Massachusetts corporate franchise of the value of property in another state and there "subject to" taxation, meant that the property in the other state must actually have borne the financial burden of taxation; that is, that the tax must actually have been levied by the other state on the corporation's property located therein before it was "subject to" taxation.

On the other hand, in L. L. F. Realty Co. v. Fuchs, 273 App.Div. 111, 75 N.Y.S.2d 356, the court held, as indicated by the second syllabus, that "Properties which are bid in by city treasurer at a tax sale or against which city holds tax liens are *subject to taxation* even though annual city taxes are not extended to them, since it is not necessary that property be on tax rolls in order to be *subject to taxation.*" (Our italics.)

In the instant case, it would seem, at first blush at least, that an item is "subject to" a tax at the time of its sale if the tax is at that time in fact paid, irrespective of subsequent procedures which may or may not result in a refund. We shall assume, however, for the purposes of this case, that the words "subject to" as used in section 144.030 reasonably could mean either "ultimate liability" for the tax, as

defendants argue, or "immediate liability" for and payment of the tax, irrespective of ultimate liability for it, as plaintiffs argue. So assuming, we think another consideration makes the lawmakers' intention not to impose sales tax on any sales of gasoline entirely clear and thus makes it also ,clear that gasoline on which the fuel tax had been paid was "subject to" an excise tax as the words "subject to" were used in section 144.030.

■ The very purpose of the exemption created in paragraph 2 of section 144.030, as that purpose is there declared in explicit language, was to avoid double taxation under the sales tax law. Thus, the very purpose of the provision that no sales tax is to be paid or collected on retail sales of motor fuel, if that motor fuel is "subject to" an excise tax under another law of the state, was to make certain that ultimate purchasers did not pay both motor fuel tax and sales tax on the same gasoline. Yet, while purposing to make certain that double taxation would be avoided, the legislature did not go further and provide some method or procedure making equally certain that either a motor fuel tax or a sales tax would be collected and retained on gasoline sold in this state. And, in our view, the legislature's failure to provide a method or procedure for a refund of sales tax paid, in those cases where even though one had declared his intention not to use motor fuel for highway purposes and had declared his intention to claim a refund, he did not for some reason claim or receive a refund of the motor fuel tax (thus resulting in double taxation, the very thing the legislature sought to avoid by enacting paragraph 2 of section 144.030) demonstrates clearly and forcibly that the legislature did not intend to impose the sales tax on gasoline sales. To illustrate, a farmer purchases gasoline which he intends not to use for highway purposes and makes the prescribed declarations of intent prerequisite to claiming a refund of the 3¢-per-gallon gasoline tax. He, of course, pays the gasoline tax at

the time of the sale, and if defendants' construction of the sales tax law is correct, he would at the same time also pay a sales tax. Suppose, however, that the farmer did, contrary to his intention, use the gasoline to operate a motor vehicle on the highway, or for some other reason could not or did not receive a refund of the motor fuel tax he had paid. If so, he would have paid both taxes with no way to recover either. We should not construe the law in such a way as to thwart the manifest purpose and objective of the legislature, viz., to avoid double taxation.

■ Defendants recognize that there is no specific procedure provided for a refund of sales tax in the event the motor fuel tax is not refunded. They recognize that such a recovery must be accomplished in some manner or double taxation results. They say, "if a purchaser of motor fuel makes a declaration of his intentions not to use the fuel upon the highway and to claim a refund of the amount of the motor vehicle fuel tax, but then does not obtain a refund of the fuel tax before the expiration of the 120 days allowed for requesting such refund, then he should * * * be entitled to a refund of the amount of the sales tax paid by him at the time of the purchase." While there is no specific provision therefor, defendants say such may be accomplished under section 136.035. That is one of the statutes describing the duties of the collection division of the State Revenue Department. It provides that the Director of Revenue shall, from funds appropriated, refund any overpayment or erroneous payment of any tax. It has been held by this court, however, that section 144.190, a part of the sales tax law, provides the exclusive method for recovery of sales taxes. Kleban v. Morris, 363 Mo. 7, 247 S.W.2d 832, 839, 840. In any event, we think it is apparent that neither section 136.035 nor 144.190 is a substitute for, or do they accomplish the purpose of, a specific provision (such as the provision in the motor vehicle tax law) for the refund of sales tax paid under the circumstances herein discussed.

That conclusion seems correct when it is considered that the provisions of section 144.190 are for the recovery of sales taxes which have been *incorrectly computed due to clerical error or mistake of the Director of Revenue, or of sales taxes paid twice, or of sales taxes erroneously or illegally collected, or of sales taxes illegally imposed*; and that section 136.035 provides that refunds shall be made of erroneous payments or overpayments of any taxes. No provision is made in either section for refund of payments of sales taxes under the circumstances we have heretofore discussed (not when made, erroneous payments or overpayments, or twice paid payments, or erroneously or illegally collected payments, or payments illegally imposed).

In Vinz v. Nord, 70 S.D. 304, 17 N.W.2d 299, 301, the court construed the South Dakota sales tax law which contained language providing that gross receipts from the sale of gasoline "already taxed under the laws of this state" SDC 57.3202 would be exempt. Another section of the sales tax law provided, "The tax imposed by this part upon those sales of motor vehicle fuel which are subject to tax under the laws of South Dakota shall be collected by the State Treasurer by way of deduction of refunds otherwise allowable under the provisions of the South Dakota statutes applicable thereto." SDC 57.3306. The South Dakota court held that it was clearly the intention of the legislature to include within retail sales subject to sales tax, the sales of gasoline, including those sales where a refund of the gasoline tax was due because of the fact that the gasoline had not been used for operating motor vehicles on public highways. But, as noted above, the South Dakota law provided a method to assure that double taxation would not occur. There, the law permitted the State Treasurer to deduct the sales tax from the

refund which was due on the motor fuel tax.

Thus, for example, if a similar provision were a part of our sales tax law, then, when the purchaser in Missouri paid the 3¢-per-gallon motor fuel tax and filed the prerequisite declarations of intention and became entitled to a refund of that three cents per gallon, a designated state agent would withhold or deduct from the 3¢-per-gallon refund the sales tax which would have been due and paid at the time of the sale of the gasoline were it not for the fact that the purchaser had then paid a motor fuel tax.

 We have no doubt that the legislature intended, as is clearly shown by its failure to have included in the sales tax law a specific method or procedure to provide for the situations described, to exempt all sales of gasoline from liability for sales tax, including those sales where the purchaser declares his intention not to use the gasoline for highway purposes and declares his intention to obtain a refund and does, in fact, obtain a refund of the motor fuel tax paid.

Whether the law as now written and as we have construed it, and under which no sales tax on gasoline has been collected since its enactment in 1934, should be changed to provide a method to assure the ultimate collection of either motor fuel tax or sales tax on all gasoline sales, is a matter for the legislature.

The judgment is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.