Ben CASCIO, d/b/a Cascio's Food Market, Respondent,

v.

Ronald BEAM et al., Appellants.

No. 61038.

Supreme Court of Missouri, En Banc.

March 11, 1980.

Lester W. Duggan, Jr., St. Charles, for appellants.

John Ashcroft, Atty. Gen., Steven Steinhilber, Asst. Atty. Gen., Jefferson City, for respondent.

WELLIVER, Judge.

This is an appeal from a judgment which permanently enjoined appellants, the Director of Revenue for the State of Missouri and two of his special agents, from enforcing a summons which commanded respondent to appear before an agent of the department of revenue with specified business records relating to respondent's tax liability. We have jurisdiction because the case involves construction of the revenue laws of

this state. Mo.Const. art. V, § 3. We affirm.

Respondent conducts a retail sales business known as Cascio's Food Market and Cascio's Delicatessen. On January 20, 1977, the director of revenue issued a summons to respondent which called for production of various books and records pertaining to the business for the period from January 1, 1970, through December 31, 1973. The records demanded by the summons included general ledgers, all journals, retained copies of Missouri State Sales Tax returns, retained copies of Federal and State Income Tax returns, retained copies of Federal and State withholding tax reports, monthly and yearly profit and loss statements, all payroll ledgers, any records of daily sales (i. e., cash register tapes or daily summaries), and all bank statements and cancelled checks. The summons was allegedly issued pursuant to § 144.330, RSMo 1969, which authorizes examination of records for the purpose of ascertaining the correctness of any tax return or for the purpose of determining the amount of tax due.[1] The printed form summons did not recite a specific purpose other than disclosing that it concerned the tax liability of respondent and that respondent was summoned and required to appear before appellant Ronald G. Beam to give testimony relating to respondent's tax liability or the collection thereof.

On March 15, 1977, respondent filed in the Circuit Court of Jackson County a petition for an injunction against enforcement of the summons. On March 24, 1977, the circuit court entered a temporary restraining order and after a hearing held on May 27, 1977, the circuit court entered a temporary injunction against enforcing the summons. The parties filed a joint stipulation of facts on March 1, 1978, and on August 28, 1978, the court made the injunction permanent.

The court held that § 144.320, RSMo 1969,[2] read in conjunction with § 144.330, RSMo 1969, gives the director the right to examine books and records which the taxpayer is required to keep, namely those that are not more than two years old. The court observed that the "records requested at the time of the service of the 'summons' . . [were] all in excess of an age of two years."[3] Consequently, the court stated that "[t]he records requested by the Director of Revenue are irrelevant to any proposed investigation that they have the statutory right to make." From the judgment permanently enjoining enforcement of the summons, appellants perfected this appeal.

This case was submitted on the pleadings and on stipulated facts and was decided by the trial court as a matter of law. In oral

1. Section 144.330, RSMo 1969, provides in pertinent part:

> For the purpose of ascertaining the correctness of any return or for the purpose of determining the amount of tax due from any person, the director of revenue or any employee of the director of revenue designated in writing by the director of revenue, may hold investigations and hearings concerning any matters covered by sections 144.010 to 144.510, and may examine any books, papers, records or memoranda bearing upon such sales by any such person and may require within the county where the person resides or does business the attendance of such person or any officer or employee of such person, or of any person having knowledge of such sales, and may take testimony and require proof for his information.

2. Section 144.320, RSMo 1969 provided:

> Every person engaged in the businesses herein described in this state shall keep records and books of his gross daily sales, together with invoices, bills of lading, sales records, copies of bills of sale and other pertinent papers and documents. Such books and records and other papers and documents shall, at all times during business hours of the day, be subject to inspection by the director of revenue or his duly authorized agents and employees. Such books and records shall be preserved for a period of at least two years, unless the director of revenue, in writing, authorized their destruction or disposal at any earlier date.

3. At the time the department of revenue filed the summons, the records it sought ranged from three to seven years old. Those records are now six to ten years old.

argument before this Court it was further agreed by the parties that the tax investigation of the respondent and the summons issued herein pursuant to such investigation related solely to the collection and payment of sales taxes and not to any other type of tax investigation. Consequently, only construction of the statutes relating to the keeping of sales tax records and the right of the department of revenue to examine such records for the purpose of ascertaining sales tax liability is involved on this appeal.

The central issue presented is whether the provisions of Chapter 144, RSMo 1969, permit inspection of a taxpayer's business records after passage of the two year period during which § 144.320, RSMo 1969, requires them to be kept.

■ Respondent contends that statutes such as this one providing for inspection of business records are to be construed strictly against the state and liberally in favor of the taxpayer. Respondent argues that construing the statutes so as to limit the right of inspection is in keeping with public policy interests which are furthered by statutes of limitation and the doctrine of repose. He contends that when §§ 144.320 and 144.330, RSMo 1969, are read together and construed in this fashion, the director's power to examine a taxpayer's books and records is limited to that period during which preservation of the records is mandated. Respondent argues that since the keeping of the records is required for only two years, it is reasonable to infer that the legislature intended to limit the director's right to investigate such records to two years. We agree.

■ The statutes in question are part of the Sales Tax Act, and are unquestionably taxing statutes. Statutes relating to taxation are to be narrowly construed in favor of the taxpayer and against the taxing authority. *Wiethop Truck Sales, Inc. v. Spradling,* 538 S.W.2d 585, 586–87 (Mo.1976); *O'Dell v. Division of Employment Security,* 376 S.W.2d 137, 141–42 (Mo.1964); *State ex*

*rel. Benson v. Union Electric Co.,* 359 Mo. 35, 220 S.W.2d 1, 3 (banc 1949); *A. J. Meyer & Co. v. Unemployment Compensation Commission,* 348 Mo. 147, 152 S.W.2d 184, 191 (1941).

In *Wiethop Truck Sales, Inc. v. Spradling,* 538 S.W.2d 585 (Mo.1976), this Court refused to require sellers of trailers to bear the burden of collecting a city sales tax. Although § 99.560, RSMo 1969, did not expressly place the burden of collection on the director of revenue except in the case of "motor vehicles," the Court declined to apply the maxim "expressio unius est exclusio alterius" to place the burden of collection on the taxpayer. The Court stated: "[t]he statutes in question here are taxing statutes and it is well established that such statutes must be strictly construed in favor of the taxpayer and against the taxing authority." *Id.* at 586–87.

In *State ex rel. Benson v. Union Electric Co.,* 359 Mo. 35, 220 S.W.2d 1 (banc 1949), although the Court upheld the application of property tax to the appellant, the Court agreed with appellant "that tax statutes are to be strictly construed and that the court may not, under the guise of construction, supply authority which the General Assembly has not provided." *Id.* at 3.

This rule of construction has been applied even to statutes that are only partially revenue statutes, such as the Unemployment Compensation Act. In *A. J. Meyer & Co. v. Unemployment Compensation Commission,* 348 Mo. 147, 152 S.W.2d 184 (1941), the Court stated:

As we see it, there is no escape from the conclusion that the unemployment compensation act includes a taxing statute, and "it is well established that the right of the taxing authority to levy a particular tax must be clearly authorized by the statute, and that all such laws are to be construed strictly against such taxing authority." *State ex rel. Ford Motor Co. v. Gehner et al.,* 325 Mo. 24, 27 S.W.2d 1, loc. cit. 3, and cases there cited. See also *State v. Hallenberg-Wagner Motor*

*Co.*, 341 Mo. 771, 108 S.W.2d 398, loc. cit. 400; *State ex rel. Western Union Telegraph Co. v. Markway*, 341 Mo. 976, 110 S.W.2d 1118, loc. cit. 1119; *Artophone Corp. v. Coale et al.*, 345 Mo. 344, 133 S.W.2d 343, loc. cit. 347; *State v. Shell Pipe Line Corp.*, 345 Mo. 1222, 139 S.W.2d 510, loc. cit. 519.

152 S.W.2d at 191. *See also O'Dell v. Division of Employment Security*, 376 S.W.2d 137, 141–42 (Mo.1964).

■ This Court stated the appropriate rules to be applied in construing the Sales and Use Tax provisions of Chapter 144, RSMo, in *Hern v. Carpenter*, 312 S.W.2d 823, 826–27 (Mo.1958). The proper construction:

> should not force a conclusion that the legislative intent was other than a reasonable construction of language used in the circumstances shows it to be. *American Bridge Co. v. Smith*, 352 Mo. 616, 179 S.W.2d 12, 16, [6, 7], 157 A.L.R. 798. The parties agree that the basic construction rule is to discover the lawmakers' intention, and, if possible, effectuate that intention, *Laclede Gas Co. v. City of St. Louis*, 363 Mo. 842, 253 S.W.2d 832, 835, [2–4], and thereby attain the object and purpose of the statute, *Kansas City v. Travelers Ins. Co.*, Mo.App., 284 S.W.2d 874, 878 [5–7].

312 S.W.2d at 826–27. Another consideration dictating a narrow construction of

§ 144.330, RSMo 1969, is the principle that a court should avoid a construction which would bring a statute into conflict with constitutional limitations.[4]

■ Not only are we bound to the principle that these statutes must be strictly construed in favor of the taxpayer and against the taxing authority, we are also bound to read these statutes in context. 82 C.J.S. Statutes § 348, pp. 723–30. This is particularly true where the two statutes to be construed were passed simultaneously by the legislature and appeared one immediately following the other in the legislative bill under consideration.

The rules of construction set out above must be applied to §§ 144.320 and 144.330, RSMo 1969, in order to determine whether the summons involved in the instant case is valid. The two sections involved were passed by the legislature in the same act.[5] Section 144.320 specifies the kind of records to be kept and the length of time that businesses must keep them. Section 144.330 grants to the director of revenue for specified limited purposes the right to "hold investigations and hearings" and to "examine any books, papers, records or memoranda bearing upon such sales." Reading these two consecutive sections together, we do not believe that the General Assembly intended to require businesses to keep sales tax records for only two years and at the same time to grant the director of revenue

---

4. Mo.Const. art. I, § 10 provides "[t]hat no person shall be deprived of life, liberty or property without due process of law." Mo.Const. art. I, § 15 provides:

   That the people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures; and no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the person or thing to be seized, as nearly as may be; nor without probable cause, supported by written oath or affirmation.

   While one may have serious doubts about the validity of the summons in question under these provisions of the Missouri Constitution, proper construction of § 144.330, RSMo 1969, renders determination of these constitutional questions unnecessary.

5. Sections 144.320 and 144.330 were enacted into law as sections 11421 and 11422 of the Sales Tax Act of 1941, Laws of Mo.1941, p. 706, and both sections have remained substantially unchanged since their original passage. Amendments adopted in 1943 substituted the words "State Auditor" in each section where the word "Auditor" appeared in the original act, Laws of Mo.1943, p. 1021, and in 1945 the words "State Auditor" were replaced by the words "Director of Revenue," Laws of Mo. 1945, p. 873. A recent amendment altered § 144.320 to include a reference to those records required to be kept in federal income tax purposes under Title 26 of the United States Code, Laws of Mo.1977, p. 328, a change which is immaterial for present purposes.

the unlimited power to summons records held by any individual that are older than two years. Such is not a reasonable interpretation of the language used by the legislature.

Appellants contend that there is no section of Chapter 144, RSMo 1969, that expressly or implicitly limits the authority of the director of revenue to inquire into past records. Appellants thus assert an investigative power that carries "no definitive time limitation." If the appellants' position were adopted, the only way an individual business person could find relief from the intrusion of the investigative process after two years is to destroy the business records, an act which may be contrary to the monitoring needs of the business. We do not believe that the legislature intended to force a business person to make such a choice.

■ The object and the purpose of § 144.330, RSMo 1969, is clearly stated in that section. The object is to permit the director to have access to records relating to certain sales. The purpose is to ascertain the correctness of returns or to determine amounts of taxes due. Respondent could not be liable for taxes for sales recorded in the materials summoned absent fraud or failure to file a return. § 144.220, RSMo 1969. We do not reach the question of what records may be subject to investigation under § 144.330, RSMo 1969, in a case involving fraud, because the director of revenue in this case has neither alleged such fraud as would remove the statute of limitations bar to tax liability for the years in question, nor has he alleged reasonable grounds to suspect such fraud. In the light of the object and purpose of § 144.330, we do not believe that the legislature intended to give the director the unfettered authority he now asserts.

Appellants argue that the use of a summons such as that involved herein is reason-ably necessary for the director of revenue to implement and enforce the provisions of the Sales Tax Act. We may take notice of the fact that the department of revenue has agents in every area of the state for the purpose of collecting sales tax and that these agents are permitted by § 144.320, RSMo 1969, to look at and inspect any taxpayer's business records at any time during business hours. We also take notice of the fact that the director of revenue has for several years had access to federal tax returns for the purpose of comparing them with state tax returns. The director of revenue is not without the means to discover fraud, nor is he presently without the necessary tools to enforce the Sales Tax Act. There is no reason to think that customary methods of discovery would not be available to the director for all the years in question in a suit or prosecution for fraud. Approval of a summons that reaches back for records older than two years would place in the director's hands the means to conduct fishing expeditions and to harass taxpayers. We find nothing in § 144.330, RSMo 1969, that authorizes the issuance of such a summons by the director of revenue or his agents.

Appellants contend that the right of the director to examine books and records is not limited by either the two year period for preserving records prescribed in § 144.320, RSMo 1969, or the two year limitation period provided by § 144.220, RSMo 1969, for additional assessments. Appellants urge that we adopt the reasoning of the United States Supreme Court in *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). In *Powell*, the Court permitted the Commissioner of Revenue under § 7602(2) [6] of the Internal Revenue Code of 1954 to summon a taxpayer in March of 1963 to appear and produce his records pertaining to 1958 and 1959 tax returns of the company of which he was president. The

---

**6.** Section 7602 authorizes the commissioner to summon persons and examine records "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . or collecting any such liability."

taxpayer contended that the commissioner was not authorized to summon the records in the absence of a showing of probable cause to suspect fraud, because the three year statute of limitations on ordinary tax liability had run and because the commissioner had already had the one examination of records permitted by the statute. The court of appeals upheld the taxpayer's contentions, reasoning that since the returns in question could only be reopened for fraud, re-examination of the records sought would constitute an "unnecessary examination" forbidden by 26 U.S.C. § 7605(b) unless the commissioner showed that he had a reasonable suspicion that the returns for an otherwise closed year were fraudulent. The Supreme Court reversed and held that

> the Government need make no showing of probable cause to suspect fraud unless the taxpayer raises a substantial question that judicial enforcement of the administrative summons would be an abusive use of the court's process, predicated on more than the fact of re-examination and the running of the statute of limitations on ordinary tax liability.

*Id.* at 51, 85 S.Ct. at 251. The Court also stated:

> We are asked to read § 7605(b) together with the limitations sections in such a way as to impose a probable cause standard upon the Commissioner from the expiration date of the ordinary limitations period forward. Without some solid indication in the legislative history that such a gloss was intended, we find it unacceptable.

*Id.* at 56, 85 S.Ct. at 254.

Appellants' attempt to draw an analogy between the investigatory powers of the Commissioner of Internal Revenue and those of the Director of Revenue of the State of Missouri is misdirected. We do not believe that the legislature of this state intended to make the department of revenue into an investigatory bureaucracy as powerful as the Internal Revenue Service of the federal government. Appellants disregard those safeguards that are built into the federal system by statute and case decision. The federal statutes expressly provide, in 26 U.S.C. § 7605(b) (1976):

> No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.

Although in *Powell*, the United States Supreme Court construed § 7605(b) not to require the government to show "probable cause to suspect fraud" in order to enforce a summons to produce documents relating to periods on which the statute of limitations on ordinary tax liability had run, the Court outlined a panoply of restrictions on the use of investigatory power which the government would be required to observe:

> [The commissioner] must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed—in particular, that the "Secretary or his delegate," after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect. This does not make meaningless the adversary hearing to which the taxpayer is entitled before enforcement is ordered. At the hearing he "may challenge the summons on any appropriate ground," *Reisman v. Caplin*, 375 U.S. 440, at 449, [84 S.Ct. 508, at 513, 11 L.Ed.2d 459]. Nor does our reading of the statutes mean that under no circumstances may the court inquire into the underlying reasons for the examination. It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused.

379 U.S. at 57–58, 85 S.Ct. at 255. Appellants would have this Court impose no similar restrictions on the director's use of the power in § 144.330, RSMo 1969.

■ A court should inquire into the reasons for which the examination of records is sought in order to guard against abuse of the court's process. The director has not shown that the investigation is for a legitimate purpose, despite the fact that he had free access to the records for two years and now seeks to inquire into records of the distant past. A court must do more than summarily affix its stamp of approval to administrative action before it permits enforcement of the director's summons.

For the foregoing reasons, we affirm the judgment of the trial court, permanently enjoining enforcement of the summons in this case.

DONNELLY, RENDLEN, MORGAN and HIGGINS, JJ., concur.

SEILER, J., dissents in separate dissenting opinion filed.

BARDGETT, C. J., dissents and concurs in separate dissenting opinion of SEILER, J.

SEILER, Judge, dissenting.

I respectfully dissent. I would reverse, holding that the director of revenue was entitled to enforce the summons for plaintiff's records.

We are concerned in this case with three sections of the Sales Tax Act. The first is § 144.220 which establishes a two-year limitation on assessment of proposed additional sales tax except in two situations. Those are instances of fraudulent tax returns or refusal or neglect to make a return. With these two exceptions every notice of proposed additional assessment of sales tax must be mailed to the taxpayer within two years after the return was filed or required to be filed. If not so mailed, it is barred.

The second section is § 144.320 which requires that taxpayers keep specified records concerning sales and provides for inspection thereof by the director of revenue at all times during business hours. The section also provides that such records must be preserved for a period of at least two years.

Finally, § 144.330 authorizes the director of revenue, for the purpose of ascertaining the correctness of any sales tax return or determining the amount of tax due, to conduct investigations and to examine any books, records, etc., bearing on such sales by the taxpayer.

The principal opinion, on the basis of the provision in § 144.320 which requires that the records be kept for at least two years, holds that the legislature intended that the right of inspection conferred by §§ 144.320 and 144.330 be limited to that minimum holding period of two years. The net effect of such ruling will be this: When the director is seeking to determine taxes within the two-year limitation period provided in § 144.220, he may inspect records and summons their production in his effort to determine whether additional tax is due. However, if the two-year period has expired and the director thereafter seeks to determine whether any sales tax is due on the basis of fraud or a refusal to make a return, he may not utilize the right of inspection of records conferred on him by §§ 144.320 and 144.330.

This anomalous result surely was not intended by the legislature. I am convinced that it did not create an exception to the two-year limitation period in § 144.220 where there is fraud or a refusal to file a return and at the same time say in effect to the director that in seeking to utilize that exception his hands are tied in that he cannot inspect records or summons them in his effort to determine whether there is fraud or a refusal to file. I cannot ascribe any such illogical intention to the legislature, nor do I find any language in these sections of the statutes which indicate any such intention. The language of §§ 144.330 and 144.320 which confers the right of inspection is clear, concise, precise and unambiguous. It contains no qualifications or limitations other than the one which specifies that the inspection shall be during business hours. Where statutory language is

**950**

clear and there is no ambiguity it is well established that there is no room for construction of the language and the rule cited in the principal opinion to the effect that taxing statutes are to be construed strictly against the taxing authority has no application. The obligation of the courts is to apply and enforce the plain language of the statute. See *St. Louis Southwestern Railway Company v. Crunk*, 594 S.W.2d 625 (Mo. banc 1980), decided _____; *United Air Lines, Inc. v. State Tax Commission*, 377 S.W.2d 444, 448 (Mo. banc 1964).

If it made sense for the legislature to say that there would be no statute of limitation in the case of fraud or a refusal to file, and it did, then it also made sense for the legislature to give the director the same tools to seek out fraud or a refusal to file that he was given to utilize in seeking out additional tax during the original two-year period when fraud or failure to file need not be involved.

In seeking to justify its result the principal opinion speaks of the fact that the summons did not allege fraud or reasonable grounds to suspect fraud. However, such an allegation should not be a prerequisite to examination of the records and the statutes do not recite any such requirement. In many instances there would be no way to know about or suspect fraud until the records are examined. If, after examination, no basis for claiming additional tax on the basis of fraud or failure to file a return is found, any claim will be barred by § 144.220 and the taxpayer will not be held liable for additional tax. If, however, a claim based on fraud or failure to file is found, such claim will not be barred under the provisions of § 144.220 and the director can proceed to assert the claim. This, in my view, is what the legislature intended and what §§ 144.220, 144.320 and 144.330, when read together, mean. The director should be able to examine the records to ascertain whether there has been fraud or a failure to file.

I recognize that in the principal opinion it is stated that "(W)e do not reach the question of what records may be subject to investigation under § 144.330, RSMo 1969, in a case involving fraud * * *", fraud or suspected fraud not having been alleged. The trouble with that caveat is that the opinion had already held unequivocally that the right to investigate and inspect under the statute is limited to a two-year period. That interpretation of the opinion is reinforced by subsequent language therein which states: "Approval of a summons that reaches back for records older than two years would place in the director's hands the means to conduct fishing expeditions and to harass taxpayers. We find nothing in § 144.330, RSMo 1969, that authorizes the issuance of such a summons by the director of revenue or his agents." That language very clearly demonstrates that the principal opinion results in a complete denial of any right of inspection in the director of revenue under §§ 144.320 and 144.330 after the expiration of two years. If he is to seek to ascertain after that time whether there has been a non-payment of sales tax on account of fraud or failure to file, he must do so by other means and without the assistance and discovery which §§ 144.320 and 144.330 were intended to provide. His hands are tied. I am convinced that the legislature did not so intend.