ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, a corporation, Plaintiff-Appellant,

v.

Thomas CRUNK, Collector of Dunklin County, Missouri, and Jesse Woodard, Successor Collector of Dunklin County, Missouri, Defendants-Respondents.

No. 61172.

Supreme Court of Missouri, En Banc.

March 11, 1980.

David E. Blanton, King E. Sidwell, Blanton, Rice, Sickal, Gilmore & Winchester, Sikeston, for appellant.

Stephen R. Sharp, Pros. Atty., Kennett, for respondents.

MORGAN, Judge.

This is an action for recovery of certain taxes and penalties, paid under protest, which was tried to the court under a stipulation of facts. On appeal there is yet no dispute as to the facts, and the stipulation thereof has been amended only to include references to the judgment as entered.

We quote therefrom as follows:

Dunklin County through respondent Thomas Crunk, Collector, mailed to appellant, St. Louis Southwestern Railway Company at Tyler, Texas, a notice of taxes due for the year 1975 in the sum of $221,647.10. Appellant mailed to respondent its check in the sum of $221,647.10, together with a notice of protest concerning an excessive school tax levy which is not at issue before the Court on this appeal, from its office in Tyler, Texas. Payment was deposited in the United States mail service, duly stamped and post-marked December 30, 1975, addressed to the Tax Collector of Dunklin County, Treasurer Ex Officio Collector, Dunklin County Courthouse, Kennett, Missouri 63857.

Respondent, Collector of Dunklin County, Missouri, made regular mail calls at the United States Post Office in Kennett, Missouri, to pick up mail addressed to him or the Collector at such times as his office as Collector was open until January 5, 1976, on which date the above referred to mail and tendered tax payment and notice of protest were received by him as Collector.

The tendered check and notice of protest were thereafter returned to appellant with the explanation by the respondent that the tendered payment was late and would not be accepted unless the late penalty in the sum of $4,432.94 was paid in addition to the tax claimed to be due by the appellant.

On January 22, 1976, appellant delivered to the respondent the amount of taxes claimed by the respondent to be due by the appellant in the sum of $221,647.10 plus $2,216.47 alleged interest and $2,216.47 alleged commission, at which time notice of protest was delivered to the respondent to the alleged excess school taxes (not at issue in this appeal) and the notice of protest relative to the interest payment and the commission payment in the sum of $4,432.94.

This proceeding for the recovery of the sums paid under protest was instituted in the Circuit Court of Dunklin County, Missouri, within ninety days after January 1, 1976. The Court without jury considered the evidence on a stipulation of facts and held that the payment of the tax was not timely and that the appellant was subject to the penalty.

The Court further entered judgment for appellant concerning the $2,894.80 excessive school tax which is not at issue in this appeal except that it is pertinent as the basis of calculating the penalty, if any, which is the subject of this appeal. From this adverse ruling that the payment of the tax was not timely and that penalty was assessed based upon the excessive school tax, the appellant takes appeal.

It should be noted that the petition filed by appellant (taxpayer) sought refunds based on two separate grounds: (1) that there had been no readjustment[1] of the prior levy when the county assessment had increased by at least ten per cent as provided in § 137.073, RSMo; and (2) that payment of the taxes actually due had been

timely and that no penalties should have attached.

The trial court found for the taxpayer on point one and ordered a refund of "the sum of $2,894.80, representing taxes paid under protest [because there had been no readjustment], together with such interest as may have accrued as a result of the payment having been made to the Collector, if the same has been invested." The record reflects a refund being made and "receipt of the sum of $3,343.46" by the taxpayer. The latter suggests that the readjustment problem "is not at issue in this appeal except that it is pertinent as the basis of calculating the penalty, if any, which is the subject of this appeal."

Next, we consider whether or not payment of the property taxes actually due for 1975 was timely when the same was mailed (and postmarked) by the taxpayer on December 30, 1975, and received by the tax collector on January 5, 1976. The answer to the question is obviously "No" if the statutory law of this state is to be controlling. Chapter 151, RSMo, is titled "Taxation of Railroads" and is devoted solely to that subject. We quote from some of the sections thereof:

151.010 All railroads now constructed, in course of construction, or which shall hereafter be constructed in this state, and all real property, tangible personal property . . . owned, hired or leased by any railroad company or corporation in this state, shall be subject to taxation, and taxes levied on real property, and tangible personal property, shall be levied in the manner herein set forth . . . . .

151.190 It shall be the duty of the county clerk as soon as the tax book is completed, to make out and certify to the secretary of the proper railroad company, or the officer making the return thereof, a statement of taxes levied on the property of the railroad company in his county . . . . .

---

1. Recent cases considering the relevant statute include: *St. Louis-Southwestern Ry. v. Cooper*, 496 S.W.2d 836 (Mo.1973); *Union Elec. Co. v.*

*Collector of Revenue of St. Francois County*, 562 S.W.2d 370 (Mo. banc 1978).

151.200 All taxes of whatever description, charged against any railroad company, according to the provisions of this chapter . . . *shall be due and payable to the county on the first day of November of the year for which the same may be levied and charged* as herein provided. (Emphasis added.)

151.210 All property owned or held by any railroad company in any county in this state shall be liable for the taxes assessed and levied . . . together with all dues, penalties and costs accruing thereon, are hereby declared a prior lien . . . and become a fixed encumbrance as soon as the amount of the taxes is determined by assessment and levy.

151.220 *If any railroad company shall fail to. pay to the county collector of the proper county any taxes levied . . . on or before the thirty-first day of December* next after the same shall have been assessed and levied, *the same shall then be, after that date, known and treated as delinquent railroad taxes* ; and the company shall forfeit and pay, in addition to the taxes with which the company may stand charged on the tax books of the county, such penalty as is provided by law for the nonpayment of other delinquent taxes, which penalty shall be apportioned to the various funds respectively. *It shall be the duty of the collector to collect and account for, as other taxes, in addition to all taxes so charged against the company, the penalty aforesaid, on all such taxes after the thirty-first day of December*, until the same shall be paid. (Emphasis added.)

151.230.1 *If, on the first day of January of any year,* any taxes levied under the provisions of this chapter are unpaid and delinquent, the county collector shall proceed to enforce the state's lien against the property of the railroad and to compel the payment of such taxes by suit in the circuit court of the county. (Emphasis added.)

Even a casual reading of Chapter 151 dictates that our task is not one of statutory construction or ascertaining the legislature's intent and purpose because "the language used is plain and unambiguous, [and] there is no reason for any construction." *United Air Lines, Inc. v. State Tax Commission,* 377 S.W.2d 444, 448 (Mo. banc 1964).

■ From Chapter 151, we must conclude: that such ad valorem taxes are due and payable on the first day of November of any taxable year; that a grace period of approximately sixty days, being the months of November and December,· is granted for payment of the same; that the taxpayer may pay said taxes to the collector by any method chosen so long as the collector receives the same on or before December 31 of the taxable year; and, that certain penalties attach on the first day of January to those taxes declared to be delinquent because they were not in the hands of the collector on the last day of December.

We make the observation, respectfully, that appellant does not mention or refer to any portion of Chapter 151 in briefs filed with this Court. Nevertheless, we do consider the two arguments that were submitted.

■ First, appellant submits that "the date of filing must be determined by an objective standard consistent with the common law 'mail-box' rule so as to provide certainty and dependability in law." Representative citations are: *Adams v. Lindsell,* 1 B & Ald. 681, 106 Eng.Rep. 250 (K.B. 1818); *Dunlop v. Higgins,* 9 Eng.Rep. 805 (Ch. 1848); *Tayloe v. Merchants Fire Insurance Company of Baltimore,* 9 How. (U.S.) 390, 13 L.Ed. 187 (1850); and 17 C.J.S. Contracts § 52. The argument actually is bottomed on § 139.060, which is titled "Nonresidents to be furnished statement" and provides, in part, that: "It shall be the duty of the collector to furnish to all nonresident taxpayers a statement of the amount of taxes assessed against any tract of land or town lot in his county for any year or years during which he is collector, and send the same by mail to the address of any person applying to him by letter for the same; . . . and whenever any funds are remitted by mail or otherwise to any collector for the payment of any taxes appearing to

be due on his tax book, it shall be his duty to receive the same and send a receipt therefor by mail to the person remitting the same; . . . ." Appellant submits that said section "specifically recognizes and provides for use of the mails as a mode of remittance for nonresident taxpayers" and then equates *mailing* of payment to the acceptance of an offer under contract law which, generally, is considered consummated by *posting* in the mails.[2]

In response, the collector challenges appellant's standing to predicate any argument upon § 139.060, because it applies to nonresident taxpayers, while appellant is a railroad corporation organized under the laws of Missouri and offered no evidence to establish itself as a nonresident taxpayer.

Second, appellant submits that "emphasis on the date of mailing rather than on the date of receipt is consistent with the custom and practice adopted by other state and federal agencies for payment of taxes." Reference is then made to federal and state provisions declaring the date of "postmark" to be the date of "payment" in payment of income taxes.

We think it unnecessary, with due deference to the arguments as made, to discuss whether or not reliance on "postmarks" would "provide certainty and dependability in law" with today's mail service; or with all state income tax returns going to one office in contrast to the one hundred fifteen offices used for the tax in question, whether or not a special procedure was necessitated for the former. This is true simply for the reason the relative law is so plain and unambiguous that there is no room for this or any other court to ignore the same. If we were to accept appellant's position, we necessarily would have to move into the legislative area and repeal by implication or otherwise most every section of Chapter 151 plus many comparable sections pertaining to payment of ad valorem taxes by others

as well as those pertaining to duties of the tax collectors and other public officials and commissions. Furthermore, in absence of some statutory authorization a court has no power to relieve a delinquent taxpayer from penalties statutorily imposed. 26A Mo.Dig., Taxation, ▮▮▮

▮ Lastly, appellant suggests that: "If the Court should rule adversely to appellant and decide that a penalty should attach, then the penalty should not be figured on and based upon the excessive school tax as set out in the ruling of the Court below." With this we agree.

However, the collector insists there should be no reduction because there will be no over-payment in any event in view of the fact § 54.320, RSMo, authorized a "commission of two percent on all back taxes and all delinquent taxes collected by him" instead of the one percent he actually added. This argument, it seems agreed, has appeared for the first time on appeal and we do not consider the same; although we do reject the idea that taxes are to be compromised or otherwise adjusted in an effort toward settlement. They were either due or not due as declared by the General Assembly.

Although we agree generally with the rulings of the trial court, it is apparent that resolution of this cause can be made better at the trial level where the tax records will be available to determine appellant's liability reference the tax in question.

The judgment is reversed and the cause is remanded for further proceedings.

All concur.

2. Compare, however, the holding in *State v. Athans*, 490 S.W.2d 25 (Mo.1973), which by implication at least would suggest that the contractual law noted is not *ipso facto* applicable in all instances, where the court said, at 26: "As a legal concept, the term 'delivery' does have various connotations and 'delivery' may be accomplished by various means for various purposes. However, in common understanding, an instrument deposited in the mails is not delivered until it is received by the addressee."